### JOHN FRANCIS v. THE STATE.

An indictment under Article 321 of the Penal Code, which charged that the accused " did *furnish* a person confined in jail, charged," &c., with " certain instruments," &c., does not describe the offence created by the Statute.

The appropriate mode of describing an offence in an indictment is, in the very words of the law which defines and describes it.

Appeal from Harris.   Tried below before Hon. P. W. Gray.

The appellant was indicted under Article 321 of the Penal Code and convicted.   The indictment charged, that " John Francis, on the tenth day of November, eighteen hundred and fifty-seven, did then and there in said county furnish one Robert Kuykendall, who was then and there lawfully confined in the jail of said county, charged," &c.

The appellant, among others, assigned the following errors :

" That the indictment is not in the words of the Statute, and that the offence attempted to be charged in the indictment is unknown to our law."

" That the word 'furnish,' used in the indictment, is not equivalent to the word 'convey' used in the Statute, and that said word used in the indictment does not contain either the spirit or the letter of the law."

The appeal having been disposed of upon these assignments, no statement of the facts of the case are deemed necessary.

*Henderson & Johnston,* for appellants.   After discussing the charge of the Court, and the evidence given in the trial, argued as follows :

The next point in this case to which we would invite your attention is the insufficiency of the indictment, which is framed under Article 321 of Book first.

The indictment charges that John Francis, on the tenth of November, 1857, did then and there "furnish" one Robert Kuykendall, who was then and there lawfully confined in the said jail of said county, &c., &c.

The indictment does not follow the words of the Statute, nor does it charge that the tools were either conveyed or furnished into the jail. It does charge that the defendant did furnish one Robert Kuydendall lawfully confined in jail, but it no where charges that the tools were furnished into the jail, and it will be seen from an examination of Article 321, that such an allegation is absolutely necessary; and in support of this position would respectfully solicit attention to the following Articles :

Article 394 says : "An indictment is the written statement of a Grand Jury, accusing a person therein named of some act or omission, which by law is declared to be an offence." Article 397 says : "The words of an indictment shall be taken, and understood according to their usual meaning in ordinary language, except where a word or phrase is used which by the laws of the State are defined particularly; in such case the word or phrase shall bear that particular meaning."

We contend that Article 394, above quoted, demands the allegation that the defendant " did convey into the jail," &c., &c., and we think the indictment upon that ground is insufficient, and we further contend that the word " furnish," used in the indictment, is not equivalent to the word " convey " used in the Statute.

These words are not defined in the Code, nor in any of the laws of the State, " and according to their usual meaning in ordinary language," are not synonymous. They are differently understood, and we think it would be a perversion of the English language, to say the words meant one and the same thing. It is true, the words in their secondary meaning may nearly bear the same construction, and upon consulting Webster, such

will appear. " Convey," as defined by him in its primary sig-nification, " is the act of conveying, the act of bearing, car-rying or transporting, by land or water, or through any other medium."

"Furnish." " To provide or supply with anything necessary or wanted."

Now convey means the act of conveying, bearing, carrying or transporting, not by another, but by oneself, and that must be actually performed by the party. Now the act itself is the active ingredient, and not procurement by another party, or the purchase of certain articles from one person for the use or benefit of another, or to supply something wanted, although the party supplying might be present, or at a distance.

The words then, in their primary signification, are entirely different and distinct, and in ordinary language would never be taken to be the same, and the best proof of this position is, that such are not their ordinary application by the people of this State, or in the United States.

But we contend that no definitions of words of this kind, nor in this manner, is either legitimate or legal, and we would call attention to the following Articles of the Code—Articles 1 and 9, Book I; and Article 28, says : "Except where a word, or term, or phrase is specially defined, all words used in this Code are to be taken and construed in the sense in which they are understood in common language, taking into consid-eration the context and subject matter relative to which they are employed."

Article 397, Book II, already quoted, presents this matter in even stronger terms than the one just cited, and we think sets this point fully at rest, and fully, clearly and forcibly sus-tains the point we seek to maintain.

If our construction is correct, we think the indictment is insufficient, and that it does not charge or allege that an offence has been committed under the law, and it shows upon its face

it has not followed the words of the Statute, nor used others equivalent thereto.

Article 398 says : "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offence."

Now if this defendant was to be punished for this offence as charged, and afterwards it could be proved he actually did convey the tools into jail, we think this indictment would be no bar to another action ; for it would only prove he "furnished" the tools, but would not show he actually conveyed them into the jail, and under the Statute, properly construed, would be no bar to another action against himself or any other party.    If it was actually discovered he did convey them into jail, and if he was punished for this offence as charged, in all probability no prosecution would be instituted.    But that is not the question.    If such suit was instituted, he would be unable to plead the "furnishing" of the tools in bar of the action, to the actual conveying of them into the jail.    The Court would be compelled to admit, that " conveying " tools and "furnishing" them are too different things, the first being a legal offence and the other not.

"It is true," Article 25, Book II, says, " the provisions of this Code shall be liberally construed, so as to obtain the object of the Legislature—the prevention, suppression, and punishment of crime."

But although this Article is thus expressive, yet it is contrary to precedents in Criminal Law, and we think this general rule, having no precedents, will not weigh much in the minds of your Honors, when it is controlled and checked by so many other portions of this Code.

*J. Willie*, Attorney General, for the State.    The point of difficulty suggested by the Court, with regard to the form of the indictment in this case, it seems to me, may be satisfactorily

answered by reference to some of the provisions of the Code of Criminal Procedure, and of the Penal Code. The well understood rule in regard to the form of charging statutory offences, viz : that ordinarily it is proper to use the language of the Act which creates the offence is subject to the great exception, (which is indeed as important and governing as the rule itself,) that words which are equivalent, and convey the same idea, may be used instead of the exact words of the Statute. This principle has been often decided by the Court. So that without appealing to the provisions of the Code this indictment is sufficient. I am unable to understand what difference there is between alleging that a defendant furnished certain tools and instruments to a person in jail, and alleging that the accused conveyed into jail such tools and instruments. But, if any good result is to follow from the adoption of a system of practice which proposes to destroy the rules of strictness familiar to the Common Law practice, there must necessarily be greater liberality in favor of indictments. It was certainly competent for the Legislature to inaugurate a new system, in place of that which had prevailed and which in effect rendered nugatory the laws punishing crime. Some of the most important of these provisions are the following : " The offence must be set forth in plain and intelligible words." (Art. 395, 7th subdivision.) "The provisions of the Code shall be liberally construed so as to attain the objects intended by the Legislature, the prevention, suppression and punishment of crime." (Art. 25.)

Criminal Law is to be construed as laws upon other subjects are construed. (Penal Code, Art. 9.)

The prevailing rules in regard to the interpretation of Criminal Law and the forms of indictment need not be referred to, as they are too familiar to the Court to require such reference. One observation, which is certainly well sustained by a reading of the Codes, is, that they were enacted as a substitute for the Common Law, which had before been the basis of our

Criminal Law. We cannot, with any propriety, therefore, say that the provisions of the new system are in derogation (as the phrase is) of the Common Law. The rule, therefore, which was heretofore in force, viz : that the words of a Statute are to be followed, is in effect abrogated. We have no Common Law offences ; they are all statutory—created too by a Statute which gives its own rules of construction.

WHEELER, J. The indictment was framed under Art. 321 of the Penal Code. The words of the law which define the crime are : "If any person shall convey into any jail any disguise, instrument, arms, or any other thing useful to aid any prisoner in escaping, with intent," &c.

The indictment charges, that the accused did "furnish one Robert Kuykendall, who was then and there confined in the jail of said county, charged," &c., "with certain instruments," &c. Do the words used in the indictment describe the offence created by the Statute ? We think clearly not. The words are to be understood according to their usual meaning in ordinary language. (C. C. P., Art. 397.) "Furnish" and "convey" are words of widely different meaning. To "furnish" a thing and to "convey" it signify very different acts. To "furnish" is to provide, or supply anything wanted by another; to "convey," is to bear, carry, or transport the thing to another person or place. A person at a distance may "furnish" the article desired, upon request by letter or otherwise, and another may "convey" it to the person for whom it is intended. One may "furnish," provide, or supply a person confined in jail with food, which another may "convey into any jail" to the person therein confined. Therefore to furnish a person who is confined in jail with any thing, may, and ordinarily does mean quite a different act from what we understand by the words "shall convey into any jail" any thing. It seems altogether probable from the evidence, that another furnished the

tools; and the indictment more properly describes his act than that of the prisoner, who, there is very little doubt, did convey them into the jail personally, or being present, did so connect himself with the fact as to render him a principal offender. (P. C., Art. 215, 216.)

It is not less a dictate of common sense than of the Common Law, that the appropriate mode of describing an offence in an indictment, is in the very words of the law which defines and describes it; because none other can be so apt and appropriate to convey the meaning of the law-maker as the words he has himself employed to convey his meaning. And when the Legislature has undertaken carefully to define every offence known to the law, in clear, perspicuous, and precise terms, and in plain language, (P. C., Art. 1,) there is the greater reason for requiring the pleader to use the very words of the law in describing the offence. If he undertakes to use other words of equivalent meaning, he should be certain that they are equivalent in meaning. The Code undertakes to define offences in plain language, in order, of course, that the meaning of the law may be intelligible to all; and as it requires that the offence be set forth in the indictment in plain and intelligible words, none can be so appropriate to describe the offence as those which the Legislature have chosen. (C. C. P., Art. 395.) As one object of a written accusation is to apprise the accused of the nature of the offence with which he is charged, the language in which the offence is defined in the law will, in general, best attain that object. There can be no occasion for such a departure from the language of the law which defines the offence, as we find in this instance; and we know of no principle which will sanction such a departure. Had the indictment pursued the law, there might be no difficulty in affirming the judgment; but as it does not, and does not describe the offence by the use of words of equivalent meaning, the conviction cannot be supported, without holding

that a prisoner may be convicted of an offence for which he has not been indicted. The judgment is reversed and the cause remanded.

Reversed and remanded.