## AUGUST ELSNER v. THE STATE.

Where there are two counts in the indictment, one charging that the defendant did engage in the sale of spirituous and intoxicating liquors, and the other that he did, on Sunday, *trade* lager beer, both to the same party, the indictment is good. (*Ante, p.* 521.)

The object of the legislature was to forbid all secular employments on the Sabbath (not excepting any) by the act under which the defendant was indicted.

The disregard of the Sabbath constitutes the offense.

To charge the offense in the language of the act is sufficient. (Paschal's Dig., Note 720.)

Where it was proved that certain customers bought and paid for lager beer on Sunday, although numerous witnesses proved that the defendant was in the habit of refusing pay from his customers on that day, it was right to refuse a motion for a new trial.

APPEAL from Bastrop. The case was tried before Hon. JOHN IRELAND, one of the district judges.

This was another Sunday case. The indictment charged that August Elsner, &c., on the 19th of May, 1867, &c., did then and there, on Sunday, engage in the sale of spirituous and intoxicating liquors to Rufus Green, against the peace and dignity of the state; and that Elsner was a grocer,

and did then and there, on the Sundays aforesaid, trade lager beer to Green.

The defendant moved to quash the indictment, because it charged no offense known to the law, and because it was vague, and otherwise informal, defective, and insufficient. The court overruled the motion. The jury found the defendant guilty, and assessed his fine at $15. The defendant moved for a new trial, but was overruled, and he appealed.

There was a bill of exceptions, on the ground that Bruno Elsner had stated, when he let these parties have the lager beer, that he was not the clerk or agent of the defendant, which plea the court refused to admit. The proof was that Turner, Green, and John Scott, a witness, went into the saloon of Elsner on Sunday, and that Green called for lager beer and young Elsner let him have it, and Green asked what was the price of the beer. The young man said 40 cents a quart. There was some dispute about the price, and as the parties left Green left 20 cents for the quart, saying that was the price. The witnesses went in through the back way, and left the same way. Green stated that he only paid 20 cents, and that Bruno Elsner let him have the lager beer, but he was the son of the defendant.

Another witness swore that Elsner, on Sunday, let him have beer, for which he paid him a dime. He knew of no other selling or trading than his leaving that dime for him and taking the beer, though he had seen him sometimes refuse to take pay for the beer on Sunday, and he always said he could not sell on Sunday, and did not keep his doors open. There was proof tending to show that he had often refused to take money from his customers on Sunday. One witness swore that he had drank one hundred and seventeen glasses of Elsner's lager in one day, and it did not intoxicate him, but he went home sober. There were various witnesses who swore that they drank lager at the

house of the defendant on Sunday, and he would take no money for it. (Act. 11th Leg., p. 222, secs. 2, 4.)

*A. D. McGinnis*, for appellant.—It is respectfully submitted by the appellant that the indictment in this case is not good, because it is exceedingly vague, defective, and attempts to charge two offenses against the Sunday law which have entirely different penalties.

The indictment charges the accused with having engaged in the sale of spirituous and intoxicating liquors, on Sunday, to Rufus Green, for which the law prescribes a penalty of not less than $15 and not more than $75, and then proceeds to charge him with being a grocer, and as such trading to said party lager beer, for which the accused was liable to a fine not less than $10 nor more than $50. (Acts 11th Leg., secs. 2, 4, p. 222;) [*ante, p.* 522.]

The court erred in permitting the evidence of John Scott as to what Bruno Elsner said and did to Rufus Green. (Draper v. The State, 22 Tex., 400.)

The jury having returned no verdict as to the second count in the indictment, and the charge in the first count being defective in not alleging the appellant engaged in the retail of spirituous and intoxicating liquors on Sunday, the case now before the court cannot be sustained. (Acts 11th Leg., sec. 2, above referred to.)

*E. B. Turner, Attorney General*, for the state.—For the definition of the offense, see acts of 16th December, 1863, and amendment made 13th November, 1866. (11th Leg., 222.)

The indictment charges the offense in the very words of the statute creating the offense. This is always sufficient. (Francis v. The State, 21 Tex., 280.)

The question of fact was fairly submitted to the jury, and their finding will not be disturbed.

Counsel have mistaken the reading of the statute in

regard to what constitutes the offense. It is an offense to retail, and also to sell, liquors in the manner denounced by the law. A man may be convicted of the one or the other, and that is the difference between the law of 1863 and that of 1866 upon this point.

CALDWELL, J.—It is objected that the indictment charges "two offenses," and is vague, defective, &c.

The first count charges that the defendant, on "Sunday," &c., "did engage in the sale of spirituous and intoxicating liquors to Rufus Green," &c.

The second count, "on the day and year last aforesaid," the defendant was a "grocer," and did then and there on Sunday trade lager beer to Rufus Green.

The object of the legislature was to forbid all secular employments on the Sabbath not excepted in the act under which the defendant is indicted. The disregard of the Sabbath, the refusal to recognize it as a day sanctified to holy purposes, constitutes the offense. The particular act alleged is no offense, but becomes so only when done on the Sabbath. The indictment we think amply sufficient to hold the defendant to answer. The offense is charged in the language of the statute. (21 Tex., 280.)

On the trial, John Scott, a witness for the state, testified that he and others went into the saloon of defendant and called for lager beer, and young Elsner let them have it. After drinking, young Elsner was asked the price of beer, and stated that it was worth 40 cents a quart. To this it was replied, that it was too much. The party laid down 20 cents on the counter and then left. The witness further said, that he had frequently seen young Elsner behind the counter attending to customers.

To all of which defendant objected, on the ground that he was not present when the transaction occurred. Objection overruled.

We think that a young man, standing behind the counter

of his father, dealing with his customers, may, without any violent presumption, be regarded as a clerk or agent, and the father and proprietor held responsible for his acts in the line of duty. It was in proof by three other witnesses that the defendant in person sold liquor as charged.

It will be observed that the defendant kept the front door closed, but without difficulty access could be had through his private house to the tap-room. This itself is suggestive of any other than a pious intent.

Defendant proved by sixteen witnesses, who had frequented his house, that they never knew him to engage in selling on the Sabbath. On that day his counter was free, "without money and without price."

This certainly evinces much liberality, and we doubt not that so generous a man could have increased the number of his witnesses. But the affirmative testimony of the three gentlemen is controlling and decisive.

JUDGMENT AFFIRMED.