## FRANK MARTIN v. THE STATE.

1. An indictment charging that A. B. "did commit *and* assault," otherwise good, is sufficient. Such use of the word "*and*" for *an* will not be noticed on general exceptions, either on motion to quash or in arrest of judgment.
2. The omission of the word "aforethought" in an indictment for an assault with intent to murder is not fatal. The intent is sufficiently charged by the use of the words "*with intent to murder*."
3. In such indictment it is not necessary to state the instrument or means used.
4. See this case as to rules of construction of the codes—of Procedure and Penal Code.
5. The recitation in the record of an oath administered to the jury, different from that prescribed by statute in criminal cases, is error, and fatal on appeal.

APPEAL from Polk. Tried below before the Hon. H. C. Pedigo.

*A. T. Watts*, for appellant.—The error relied upon for the reversal of the judgment and dismissal of cause is the overruling of appellant's motion to quash the indictment, and motion in arrest of judgment. There is no description of the "intent" in this indictment, no averment of premeditation, the necessary word, "aforethought," entirely omitted, and no word or term of same or like import used. The omission is fatal. (See State v. Wilson, 7 Indiana, 516; State v. Murphy, 21 Indiana, 441; State v. Harris, 34 Missouri, 347; Sarah v. The State, 28 Mississippi, 268; State v. Lee, 19 Wisconsin, 562; State v. Howell, Georgia decisions, Part I., 158.) It is submitted, that the definition of "an assault with intent to murder," in the five States, to decisions, reference above made, is the same as the definition found in our code. (Also see American Criminal Law, by Wharton, Sec. 1276, Note h., for what is held a sufficient description of the "intent" by the Supreme Court of Ohio.)

It was certainly not the intention of the Legislature, in adopting our "Criminal Code" and "Code of Criminal Procedure," to effectually do away with "certainty" in criminal pleading, or even to abandon the "precedents" tested by time and experience.

Our negligent mode of civil pleading has engendered a disposition, or rather a habit, of looseness in our criminal-pleading; and I respectfully submit that if the courts exercise their ingenuity in straining constructions of the law to assist the unnecessary blunders of the criminal pleader, soon the certainty in criminal pleading will be on par with the certainty in civil pleading in our State. It is submitted that if the indictment is not good for an assault with intent to murder, then, upon motion, it should have been quashed, and, as the statute has interposed, the cause dismissed.

The use of the conjunction "and" between the words "commit" and "assault" destroys the sense of the charge, and renders the indictment bad.

The judgment should be reversed because of the refusal of the court to give the charge asked by appellant.

The jury was not sworn as required by law, as will appear by inspecting the judgment. (Pas. Dig., Art. 3029, and Note 741; James Baird v. The State, recently decided.)

*Browne*, for the State.

Gray, Associate Justice.—The appellant was prosecuted for an assault with intent to murder Ed. Martin. They appear, from the evidence, to be citizens of African descent, and formerly fellow-servants. The rules of law and decision in respect to their conduct and rights are precisely the same as those to be applied to any other citizen.

Two of the points presented for our consideration arise upon the sufficiency of the indictment. After alleging

the time and place, it charges that the accused, "in and upon the body of one Ed. Martin, then and there being, did commit *and* assault, with one certain pistol called a six-shooter;" and, after alleging its value, that it was a deadly weapon, loaded with gunpowder and six leaden balls, it proceeds, "which he, the said Frank Martin, then and there had and held in his right hand, in and up-on the body of him, the said Ed. Martin, with the intent him, the said Ed. Martin, to wilfully, maliciously, and of his malice, then and there to kill and murder," etc., closing in the usual form.

Appellant filed a motion "to quash and set aside" this indictment, stating various causes of objection to its form and substance, which are termed "exceptions" by the Code of Criminal Procedure. The motion was over-ruled, and after conviction a motion in arrest of judg-ment, on substantially the same grounds, was also over-ruled. These and some other matters are assigned for error, but most of them are not sustained, or do not ap-pear on the record, and but two of them are now relied on by appellant's counsel in their brief.

First, it is objected that the use of the conjunction "*and*" before the word "assault," instead of the article "*an*," destroys the sense of the charge and vitiates it. But that this is a mere clerical mistake seems apparent, and the sound of the two words is so nearly the same that in reading it could scarcely be misunderstood. Moreover, such a defect, if deemed important, should have been spe-cifically pointed out in the exceptions, which was not done.

The second cause of objection, now relied on as most material, is that "the offense" is not "set forth in plain and intelligible words," as required by the 7th Clause of Article 395, Code of Criminal Procedure (Pas. Dig., Art. 2863), because the word "*aforethought*" is omitted after the word "malice" in the statement of the intent to kill and murder, and the intent of the accused is nowhere else

alleged. The fact of the omission of this word is apparent, and it is insisted that it is essential to constitute a valid indictment for the offense of "assault with intent to murder."

If this be true, that the law requires the use of that term as necessary to "set forth in plain and intelligible words" the offense of an assault with intent to murder, then the indictment is fatally defective, and the judgment should have been arrested. It would not have been sufficient to sustain the exceptions to the indictment, because there was a sufficient charge of an assault, of which the accused might have been convicted under it; but after conviction of the felony, it would have been good ground to arrest judgment.

But is the use of the words "malice aforethought" necessary to constitute a valid indictment for assault with intent to murder? The question has been argued in this, and in most of the cases we have examined in our Reports, chiefly upon the authority of common law authorities from other States, and decisions of our own court made anterior to the adoption of the criminal codes. There are several cases in which it has been held that the codes have introduced a system of greater simplicity and less nicety in criminal proceedings than existed under the common law, and which have sustained indictments manifestly defective, under it, though we cannot assert that there has been entire uniformity in adherence to the principles announced in them.

It may be admitted that the common law authorities do require the use of the words "malice aforethought" as descriptive of the intent of the accused, either in connection with the act, the assault, or with the ulterior design to kill and murder; and we find no case in our Reports in which those words are wholly omitted in the indictment. Yet the question remains, are they necessary under our codes?

The adoption of the codes was a legislative effort for reform and improvement in the administration of criminal law. That they have accomplished much to that purpose is well known to the court and old members of the legal profession. Similar improvements had been made in other States, and even in England, whence we derived the common law. It is remarkable that in that country there is less strictness in forms and less adherence to technical niceties than is now constantly insisted upon and often maintained in our courts. Nor has it been found there or in other States which have adopted similar reforms that there is any less real protection given to the just rights and liberties guaranteed to the citizen by the Constitution, while on the other hand the great ends of the administration of justice have been facilitated. In England, since the statutes of 24 and 25 Victoria, C. 100, indictments for crimes have been much simplified. Even "in an indictment for felonious homicide it is not necessary to set forth the manner in which or the means by which the death was caused." (Cooley's Blackstone, Bk. 4, p. 308, notes.) We cite this merely in elucidation of what we believe to have been the spirit and general design of the Legislature in adopting the codes. But that may be better done and shown by a few citations from the codes. In the very outset of the Penal Code, Part I., under the caption "General Provisions relating to the whole Code," Title 1—"The general objects of the code, the principles on which it is founded, and rules for the interpretation of penal laws"—we find the following provisions :

"ARTICLE 1. The design of enacting this code is to define in plain language every offense against the laws of this State, and affix to each offense its proper punishment." (Paschal's Digest, Article 1603.)

"ART. 3. In order that the system of penal laws in force in this State may be complete within itself, and that

no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission as a penal offense unless the same is expressly defined and the penalty affixed by the written law of this State." (Paschal's Digest, Article 1605.)

"ART. 4. The principles of the common law shall be the rule of construction, when not in conflict with the Penal Code, or Code of Criminal Procedure, or with some other written statute of the State." (Paschal's Digest, Article 1606.)

"ART. 9. This code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law." (Paschal's Digest, Art. 1611.)

The act to establish the Code of Criminal Procedure recites in its preamble the objects of its enactment, and we find the following provisions in the "Introductory Title, Chapter 1, Containing General Provisions":

"ART. 25. The provisions of this code shall be liberally construed, so as to attain the objects intended by the Legislature—the prevention, suppression and punishment of crime. (Paschal's Digest, Art. 2491.)

"ART. 27. Whenever it is found that this code fails to provide a rule of procedure in any particular state of case which may arise, and is therefore defective, the rules of the common law shall be applied and govern." (Paschal's Digest, Art. 2493.)

It will be observed that the two articles in which reference is made to the common law in certain contingencies are amendments to the codes as originally adopted, and do not materially affect the purpose and scope of the

. other provisions cited, nor vary the general objects of the codes. With these general provisions borne in mind, we can more readily comprehend the great changes sought to be effected by them ; for these rules of construction are wholly variant from, and indeed in conflict with, the strictness of construction and the technical nicety of phraseology and circumlocution of statement which marred and embarrassed the administration of justice under the common law rules and practice.

In accordance with these provisions, one of the requisites of an indictment is declared to be, that "the offense must be set forth in plain and intelligible words ;" just as it is required that the offense be defined "in plain language;" and also that the law defining it "shall be construed according to the plain import of the language in which it is written," etc. Applying these rules to the definition of the offense for which appellant was indicted, there seems to us no difficulty in understanding it. It is declared, "if any person shall assault another with intent to murder," he shall be punished. An assault and murder are defined in other articles by stating what acts and purposes constitute those offenses. Their meaning is definite and well understood. To constitute murder, the killing must have been done with malice aforethought; and in an indictment for murder, that intent must doubtless be alleged, for the simple reason that it is so defined in plain language in the code. The charge of an assault with intent to murder clearly conveys to the mind that the party charged did make an attack on the party assaulted, under circumstances constituting the offense of an assault, and that he did so under the circumstances constituting the offense of murder—that is, the intent to kill with malice aforethought. If the language of the code in defining this offense is in plain language enough to be clearly understood, then it would seem to follow that an indictment charging a party in that

language must be deemed to be in plain and intelligible words, and a sufficient compliance with the law.

We think that the indictment was sufficient, though it contains much that was unnecessary to be stated as to the means and instrument used. This is not necessary in such a case, if indeed it be required in any where the instrument or means used are not elements of the offense or affect the degree of criminality or extent of punishment. (Francis v. The State, 21 Texas, 280; Calvin v. The State, 25 Texas, 791; The State v. Jennings, 35 Texas, 503.)

Another question arises on the record, and is called to our notice by counsel. It is affirmatively recited in the entry of judgment that the jury were "sworn to try the issue between the State and accused upon his plea of not guilty." This is not the oath required by Article 563, Code of Procedure (Pas. Dig., 3029). It omits essential elements of that oath. It has been decided, that where the record sets out the oath administered, it must be taken as true. No presumption can be indulged against the affirmative statement of what oath was administered, as appears here, and that when an improper oath thus appears to have been administered it is an error fatal to the proceedings. (Arthur v. The State, 3 Texas, 403.) This decision was made upon the statute then in force regulating criminal trials. The same reason applies under the code, and no liberality of construction can change the plain import of the language used in the record, showing that the proper oath was not administered. For this error the judgment must be reversed and cause remanded for a new trial.

REVERSED AND REMANDED.