## THOMAS NASH v. THE STATE.

1. ASSAULT WITH INTENT TO MURDER.—In an indictment for an assault with intent to murder, it is not necessary to name the weapon used, or to state the manner in which it was used.

2. CONTINUANCE.—More than a year had elapsed since the accused had taken any steps to procure the attendance of the witness for whose testimony the continuance was sought.   *Held,* that the continuance was properly refused for want of diligence.

3. THREATS of a dangerous man afford no justification or excuse for an assault upon him when he is doing nothing reasonably calculated to induce the threatened party to believe he is in immediate and imminent danger.

4. NEW TRIAL.—Bias or prejudice of a petit juror, discovered after verdict,. may constitute cause for a new trial, notwithstanding that on his *voir dire* he was not interrogated as to bias or prejudice; but, if there be nothing in the record to the contrary, this court presumes that the court below did its. duty in this regard, and that each juror declared himself free of bias or prejudice in the case.

5. SAME—CASE STATED.—That a petit juror said, immediately before the trial, that he would not "be in the shoes of the accused for ever so much," does. not show bias or prejudice.

6. SAME.—In support of a motion for a new trial an affidavit was filed alleging that on the morning of the trial one of the petit jurors said that the accused "was going to the penitentiary, anyhow, or words to that effect."   On principle, and also because of apparent sharp practice in the procurement of affidavits in support of the motion, *held,* that this court will not disturb the verdict of conviction.

7. PRACTICE IN SUCH CASES.—Under the circumstances above indicated, the prosecuting attorney should bring the impugned juror before the court,. and examine him touching the matter alleged in the affidavit.

APPEAL from the District Court of Kerr.   Tried below before the Hon. T. M. PASCHAL.

The indictment was for an assault with intent to murder one Milton Kennedy.   The jury found the appellant guilty,. and awarded him two years in the penitentiary.

The difficulty occurred at Kerrville, in July, 1875.   According to the evidence for the state, Kennedy and Nash appear to have been on familiar terms.   The former desired to obtain from the latter a bill of sale for some cattle, and

told the district clerk that he would whip Nash if he did not sign it. This threat, however, does not seem to have been communicated to Nash before the difficulty. Kennedy left the clerk for the purpose of bringing Nash before him to execute the bill of sale. He found Nash in a bar-room, taking a drink, and, stepping up to him said, "Come, Tom, let us go and fix up those papers, the clerk is waiting for us." Nash said he was not ready yet, and proposed to take another drink. Kennedy, however, took him by the arm in a friendly way, and got him out of the bar-room and started towards the clerk's office, when Nash told him to let him go, and pulled away from him, drawing his pistol as he did so. Kennedy expostulated, and told Nash to put up his pistol, but the latter fired away and shot Kennedy through the arm. Nash then ran for his horse; Kennedy fired several shots at him, striking him in the arm and killing his horse. The state's witnesses agreed that before Nash shot there was no offensive demonstration on the part of Kennedy.

A remarkably opportune witness, however, testified for the defense that on the morning of the difficulty he happened to be riding through Kerrville, and was going in the direction of the clerk's office when he came up behind Kennedy and Nash, who were walking in the same direction; that Kennedy was behind Nash, and had his six-shooter out, and witness heard him say to Nash, "If you don't fix up them papers to day, by G—d I will shoot the top of your head off;" that Nash looked back but made no reply, and they both went on towards the clerk's office.

This, according to the testimony of this witness, occurred before Kennedy found the clerk, and necessarily several minutes before Kennedy went after Nash to the bar-room; but, nevertheless, the witness, though he "rode right through town" without stop, saw the subsequent movements of the parties up to the entrance of Kennedy into the bar-room,

and "about ten or fifteen minutes" after that he heard the firing.

No brief for the appellant.

H. H. Boone, Attorney General, and W. B. Dunham, for the State.

White, J.    The indictment in this case being for assault with intent to murder, alleged to have been committed with a pistol, it was made one of the principal grounds, in the motion to quash, that "it is not averred in the indictment in what manner the pistol was used, or attempted to be used, by the accused—whether by shooting, striking, or otherwise." The court did not err in overruling the motion.

In assaults with intent to murder it seems it is not necessary to name the weapon with which the assault was committed, or the manner in which it was used. Martin v. The State, 40 Texas, 19 (which cites Frances v. The State, 21 Texas, 280; Calvin v. The State, 25 Texas, 791; The State v. Jennings, 35 Texas, 503); Bittick v. The State, 40 Texas, 117; The State v. Walker, 40 Texas, 485; Mayfield v. The State, 44 Texas, 59; Browning v. The State, decided at this term, ante, p. 47.

An application for continuance was made and overruled, and a bill of exceptions was saved to the ruling. Over a year had elapsed, and two terms of court intervened, since the defendant had taken any steps to secure the attendance of the witness for whose testimony the continuance was sought. The court very properly held that there was a total want of diligence shown.

Several bills of exception were saved to the action of the court in admitting and excluding evidence. The main objection was the refusal of the court to allow evidence of the general character of the party alleged to have been assaulted, as to his being a man of violent and dangerous

character.   This evidence, as we are informed by the court,.
in the qualification to the bill of exceptions, was refused
because "no sufficient predicate had been laid therefor, the
proof having shown that the threats made were conditional,
and that, at the time of the shooting, no effort was being
made by Kennedy (the party assaulted) to execute any
threats upon defendant."   The. other principal objection
was to the charge of the court with reference to the threats.
We propose noticing these two objections in connection, as
they are both blended together under .the law (Pasc. Dig.,
Art. 2270), and made dependent upon each other.

The charge was undoubtedly framed, and the evidence
excluded, under the rules laid down by our supreme court
in the case of *Irwin* v. *The State;* and these rules meet
and answer these objections so fully and satisfactorily that
we cannot perhaps do better than reproduce them here.
Our learned chief justice, in that case, says :   "Our Penal
Code, which is in the main a reproduction of the common
law, gives to a person whose life is seriously threatened by
a desperate and dangerous man the alternative of seeking
the protection of the government from the intended assas-
sination (which is too seldom resorted to), or to abide the
risk of protecting himself by his own strong arm.   If he
should choose the latter mode or defense of his person, it
is allowed by law only under the limitation and condition
that he must have the patient watchfulness, courageous
firmness, and reasonable discretion to await the doing of
some act by his antagonist which is reasonably calculated to
induce the belief, and does induce the belief, that he is then
in immediate and imminent danger of losing his life or of
suffering some great bodily harm from that which really is,
or reasonably appears to be at the time, the impending
attack of his assailant.   Pasc. Dig., Art. 2226.   The law
does not fix, nor is it practicable beforehand to fix, upon
what that act demonstrating the intention shall be ; still, it.

must be some act which is reasonably calculated to induce the belief that the threatened attack has then commenced to be executed, and not a mere act of preparation to execute the threat at some future time, as a week, a day, or an hour, or other indefinite period of time." *Irwin* v. *The State*, 43 Texas, 236; *Gilleland* v. *The State*, 44 Texas, 356. See, also, *Plasters* v. *The State*, 1 Texas Ct. of App. 673.

The threats of the party assaulted, if any such were made, were conditional, and there was no evidence adduced that at the time of the assault he was then doing anything calculated to show an intent to execute them. Under the rules as above laid down, the court did not err in excluding the testimony of the character of the assaulted party; and the charge of the court upon the law of threats was entirely in harmony with the same rules, and is unexceptionable.

One of the grounds urged in the motion for a new trial was that one of the jurors who tried the case, immediately before the trial, had made use of expressions showing that he had made up his opinion on the case, and that he was prejudiced against the defendant. This ground was supported by the affidavits of two witnesses, setting forth the facts. One of the affiants, Potter, deposed that he had heard Fred Kline, the juror, "say, with emphasis, just immediately before the trial of said cause, that he, said Kline, would not be in Nash's shoes for ever so much, or words to that effect." The other affiant, Dietert, states that he heard Fred Kline, the juror, "say, with emphasis, on the morning of the trial of said cause, that one Nash was going to the penitentiary, anyhow, or words to that effect." Both affiants stated that they had not communicated these expressions of the juror Kline to either the defendant or his attorney.

It is not affirmatively shown by the record that prior to his being placed upon the panel the juror was interrogated and examined on his *voir dire*, touching his bias or preju-

dice in the case, or whether there was in his mind such a conclusion of the guilt or innocence of the defendant as would likely influence him in his action in finding a verdict. Pasc. Dig., Art. 3041. The failure, however, to make this preliminary examination as to the qualifications of the juror it seems would not preclude an investigation upon a charge of prejudice, as in this case, upon a motion for a new trial; " especially where the facts do not show gross negligence on the part of the complaining party." *Hanks* v. *The State*, 21 Texas, 526.

In the absence of anything to the contrary appearing upon the record, we will presume that the court below did its duty in testing the qualifications of the jurors impaneled to try the case. If this is so, then the juror must have declared himself free from all bias and prejudice in the case. As to the matter stated in the affidavit of affiant Potter, above set out, that the juror would not be in Nash's shoes for ever so much, the statement amounts to nothing, and does not show any bias, either in favor of or against the defendant, and is such a statement as any one might make with reference to a party when being put upon trial for an offense involving his liberty.

The expression attributed to the juror, in the affidavit of the affiant Dietert, to wit, that " Nash was going to the penitentiary, anyhow," if made use of by the juror, was much more serious, though the affiant does not state that those were the exact words used, but qualifies it by saying " or words to that effect." This assuredly should not outweigh the solemn statement of the juror on his preliminary *voir dire* as to his qualifications, to the effect that he was without bias or prejudice in favor of or against the defendant, and that he had not, from hearsay or otherwise, established in his mind such a conclusion as to the guilt or innocence of the defendant as would influence his action in find-

ing a verdict. It was simply the counter-balancing of one affidavit against the other, and leaving the matter to be decided by the court.

We are the rather more inclined to place this construction upon the affidavit in this particular case for the further reason that the record contains another and third affidavit, prepared by the attorney for the defendant, which the affiant Wixon repudiates in a subsequent affidavit, wherein he states that " John E. Oschse, one of the defendant's counsel, read said affidavit to him in a hurried manner, on yesterday, and that, upon examination thereof to-day, he says that said affidavit does not contain the statement he made to said Oschse ; affiant says he never made any statement to the effect that he heard Fred Kline (the juror) make the ·statement contained in said affidavit, nor any statement to the prejudice of Thos. Nash." The defendant's attorney does not pretend to meet the statement and charge in this affidavit by his own statement to the contrary, or in any other manner. If true, and he willfully misled affiant, such conduct is very reprehensible and inexcusable, and is justly calculated to throw suspicion, to say the least of it, upon the correctness and truth of the other affidavits in the case.

*The prosecuting attorney, under the circumstances, should have had the juror Kline brought before the court and examined touching the matter. This is the uniform practice in such cases.* For the reasons, however, as above stated, and the further reason that the judge of the court below had the parties before him, and could, by proper investigation have satisfied himself, if there had been any question in his mind as to the truth of the affidavits, and from the further fact of his overruling the motion, he, we infer, must have been satisfied that the juror was unprejudiced, we are of opinion that his action should be sustained.

This case is not near so strong in its facts upon this point

as was the case of *Henrie* v. *The State*, 41 Texas, 573, in the language attributed to the juror, and is entirely different in the circumstances connected with the affidavits.

So far as the other points in the case are concerned, we deem it unnecessary to notice them. Taking the whole record together, we are of the opinion that the defendant has had a fair and impartial trial, and that the verdict and judgment are warranted by the law and the facts, and, therefore, the judgment is affirmed.

*Affirmed.*