Statement of the case.

[No. 1392.]

ISHAM MILLS *v.* THE STATE.

1. ASSAULT TO MURDER—INDICTMENT—EVIDENCE.—Under a separate indict-
ment for assault to murder, it was proper to allow the State to prove
that another did the actual shooting, and that the defendant was present,
aiding and abetting him in the commission of the offense, although no
such allegation was made in the indictment.
2. SAME.—An indictment for assault to murder need not allege all of the par-
ties who participated in the attempted homicide in order to admit evi-
dence that a party not on trial actually committed the offense while the
accused on trial was present and aiding and abetting him.
3. PRINCIPALS AND ACCOMPLICES.—One who is present, and, knowing the
unlawful intent of another who commits an offense, aids or encourages
by words, acts or gestures, is a principal and not an accomplice.
4. NEW TRIAL — NEWLY DISCOVERED EVIDENCE — DILIGENCE.—See the
opinion for an application for new trial based upon newly discovered evi-
dence which is held insufficient in that it shows a want of diligence.
5. ASSAULT TO MURDER.—Indictment for assault with intent to murder need
not charge that the assault was committed with malice aforethought.

APPEAL from the District Court of Brazoria. Tried below be-
fore the Hon. W. H. Burkhart.

The indictment charged the appellant with an assault with in-
tent to murder Isham Berry. His trial resulted in his conviction,
and his punishment was assessed at a term of three years in the
penitentiary.

Isham Berry testified, for the State, that he was shot in the
side with a small pocket pistol by Henderson Dart, on the night
of May 20, 1882, at the house of a woman on the farm of G. O.
Jones, in Brazoria county. The witness saw Dart and the de-
fendant together in the road before the shooting.

On cross-examination the witness stated that Dart and the
defendant were sporting with his name in attempts to spell it,
which the witness did not like. He did not hear the defendant
say anything. He did not hear him tell Dart to shoot. He did
not believe that the defendant encouraged Dart by word, act
or gesture to shoot, nor did he believe that the defendant had
anything to do with it.

Frank Mathews testified, for the State, that he was standing

off about thirty yards from the parties when the altercation took place between Berry and Dart. A number of words passed between them. Dart told Berry that if he would come out of the house he would kill him. Berry came out, opened his shirt, patted his breast and told him to shoot. Thereupon Dart fired. Berry was going towards Dart at the time, and had passed from the door step. The witness heard the defendant tell Dart to shoot the d—d son of a b—h, that he, defendant, would "stand to him." The defendant was then standing within eight feet of Dart. Dart and the defendant, who were then partners, went off together. Berry had no arms.

Cross-examined the witness reiterated his testimony as to the statements of the defendant at the time of the shooting. He declared that he had no particular dislike to the defendant, but wanted the right course pursued with reference to this case. The witness brought this case into court. The extent of his dislike to the defendant was that on general principles the latter was of no account. He had known Berry long. Berry was a good man.

Bill Davis, for the defense, testified that he saw the difficulty between Dart and Berry. He heard Dart tell Berry that if he came out of the house he would shoot him. Berry went out, with a woman trying to pull him back. He broke loose and was advancing on Dart when Dart shot him. The defendant was there but said nothing. He did not in any way, by word or act, encourage Dart to shoot. If he had the witness would have heard him. There was much shouting and noise going on about them at the time, but the defendant made no such statements as those imputed to him by the last witness.

Logan Fields, for the defendant, testified that he was present at the difficulty, and heard the defendant, who was a "loud, mouthing, bluff kind of a fellow," tell Dart to "go ahead"—that he would "stand by him in whatever he did." Dart was a bad, determined man, and would not be influenced by anything the defendant could say.

In rebuttal, Berry denied that he advanced towards Dart at the time of the shooting, or that a woman had hold of him and that he broke loose. He was corroborated in this by Mathews, who was also recalled in rebuttal.

The motion for new trial attacked the verdict as unsupported by the evidence, challenged the charge of the court, and raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, J.  It appears from the statement of facts that Henderson Dart shot the prosecutor, Isham Berry. Mills (the appellant) was indicted separately, there being no mention of Dart in the indictment.

Upon the trial the defendant excepted to all evidence tending to prove that Dart shot Berry, upon the ground that there was no allegation in the indictment to that effect. The court overruled the objection and the defendant excepted. We are of the opinion that the ruling of the court was correct. The State proved that Dart did the shooting, and that defendant was present, and knowing the unlawful intent of Dart, abetted and encouraged him in the commission of the offense.

The question here raised is this: Must the indictment charge all of the parties engaged in the commission of the offense, in order to the admission of evidence to prove that a party not on trial committed the act, and that the defendant (the party on trial) was present, and knowing the unlawful intent of such person, aided him by acts or encouraged him by words or gestures? We are of the opinion that this question must be answered in the negative. If the party is present and knows of the unlawful intent, aids by acts or encourages by words or gestures the party who actually commits the unlawful act, he is held a principal actor, and can be prosecuted and convicted as such. In this case defendant told Dart to shoot; that he would stand by him. Dart shot. Dart's act was the act of defendant to the same extent and to all purposes in law as if defendant had actually shot Berry himself; and it is proper for the indictment to charge him with the actual shooting of Berry, omitting any or all others engaged in the commission of the act.

There is conflict in the evidence, but if the State's witnesses are worthy of credit the verdict is amply sustained.

If present, knowing the unlawful intent, aiding by acts or encouraging by words or gestures, the party would be a principal and not an accomplice. Hence the rule in *McKean* v. *The State,* 7 Texas Court of Appeals, 631, and *Simms* v. *The State,* 10 Texas Court of Appeals, 131, would not apply.

Defendant moved for a new trial upon the ground of newly discovered evidence, which appears by his motion and the affi-

davit appended thereto of Robert Drayer. The material part of
the affidavit is as follows: That, on the night of the twentieth
of May, 1882, he was on the plantation of Mr. George O. Jones,
in the county of Brazoria, it being the place at which Isham
Berry was shot by Henderson Dart; that he witnessed the shoot-
ing of Berry; when the difficulty first started between said
Berry and Henderson Dart, Isham Mills had not arrived; he got
to the place where the shooting was done just as Henderson
Dart fired his pistol and shot Isham Berry; when he arrived
there he rushed up to Henderson Dart and caught hold of him
and endeavored to take his pistol from him. After Dart had
fired the first shot, he threw his right hand around and tried to
shoot Berry the second time, and would have done so had not
Isham Mills, who had hold of him, prevented him from shooting
by jerking Dart around and keeping his back turned to Berry.
Dart made several attempts to shoot Berry again, but was pre-
vented by Isham Mills, who finally dragged Dart away from
where the shooting was done. Dart was a very small man,
weighing perhaps about one hundred and twenty-five pounds,
and was easily handled by defendant, who was a very strong
man. Deponent further says that he is positive that Isham
Mills did not by any word or gesture encourage Dart in the
shooting, but upon the contrary prevented him from killing
Isham Berry. That he did not see Frank Mathews present at
the shooting, and does not think he was present. That about a
quarter of an hour after the shooting, deponent went up to the
dwelling house on the place and saw Frank Mathews putting on
his clothes in the house. The dwelling house is situated over
two hundred yards from where the shooting occurred.

The first question here presented is as to the diligence of de-
fendant to discover this testimony. In his motion for new trial
upon this ground he states: "Defendant did not know of the
existence of said Drayer's testimony until after the trial; that
he could not have procured it by the use of reasonable dili-
gence."

This last statement is very doubtfully ended. What prevented
defendant from discovering this evidence? Defendant and
Drayer were at the place of the difficulty. He, defendant, must
have seen him. He does not deny seeing Drayer, and, if he
saw him, certainly ordinary diligence required him to inter-
view him and discover what he knew of the matter. Again, if
in truth defendant came up just at the time, or immediately af-

ter the shot by Dart, and prevented him from again shooting Berry, he, defendant, knew it, and would have made an effort to prove this by some of the witnesses who testified on the trial. This he did not attempt to do, and by this failure suspicion is thrown upon this ground for new trial. It will also be noted—and this point is, as we think, important—that Drayer does not state in his affidavit that he had not informed defendant or his counsel of what he knew of the difficulty until after the trial.

We are of the opinion that ordinary diligence on the part of defendant would have enabled him to have discovered this testimony, and that the court below did not err in overruling his motion for new trial.

The indictment charges that defendant "did assault Isham Berry with intent to murder him, the said Isham Berry." It is not charged that the assault was made with malice aforethought. Defendant moved, because of the absence of this allegation, in arrest of judgment. The court overruled his motion, and he excepted.

Must this be charged in an indictment for assault with intent to murder? This precise question was discussed at length by Judge Gray, in *Martin* v. *The State,* 40 Texas, 19, and it was there held that the omission to allege that the assault was made with *malice aforethought* was not fatal to the indictment.

We have given this record a careful examination, and are unable to discover such error, if any, as will require a reversal of this judgment. The judgment is affirmed.

*Affirmed.*

Opinion delivered February 17, 1883.