No. 2293.

## DOCK GORDON *v.* THE STATE.

INDICTMENT FOR ASSAULT WITH INTENT TO MURDER charged that the accused "did then and there make an assault upon Frank Stoker, with the intent to murder him, the said Frank Stoker." This was excepted to on the ground that it charges a conclusion of law, and not the facts constituting the offense. *Held*, by a majority of the court, that the indictment was sufficient, and the exception properly overruled. Note the animadversion of Hurt, J., upon the ruling, and upon the precedents and reasoning on which it is maintained.

APPEAL from the District Court of Rusk. Tried below before the Hon. J. G. Hazlewood.

Appellant was convicted of an assault upon Frank Stoker, with intent to murder, and a term of two years in the penitentiary was assessed as punishment.

There is no occasion for a statement of the evidence.

No brief for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

HURT, JUDGE. Appellant was convicted of an assault with intent to murder, under an indictment, the charging part of which is that he "did then and there make an assault upon Frank Stoker, with the intent to murder him, the said Frank Stoker." A motion to quash was presented, based upon the ground that a conclusion of law is charged, and not the facts constituting the elements of the offense. The motion was overruled and exception taken.

This court has held that such an indictment is sufficient, following the opinion in Martin v. The State, 40 Texas, 19, and another case decided by our Supreme Court. In Mills v. The State, 13 Texas Court of Appeals, 491, the opinion was written by the present writer, and in that I simply say: "This precise question was discussed at length by Judge Gray, in Martin v. The State * * and it was there held that the omission to

is a good well of water at Briscoe's, and people, particularly stock drivers, stop there frequently in summer to get drinking water. Witness seldom passed there in summer without seeing somebody's horse hitched there.

Bob Davis, for the State, testified that he told Briscoe he could save him, witness, a hundred dollars, and asked him to be as light on this case as possible. Witness did offer Briscoe money, but did not do so at defendant's instance, and did not so tell Briscoe. On his cross examination the witness said: "I went to save myself and on my own account. At that time I was guarding convicts at railroad camp, about a mile from where Briscoe lived." Here the State rested.

Bob Davis, as a witness for the defense, testified that he knew both the defendant and Mrs. Briscoe. He knew of the defendant visiting Briscoe's, and often saw him there during Briscoe's absence. His horse was frequently hitched there. Witness was himself a single man, and frequently visited Briscoe's house, whether Briscoe was there or not. Cross examined, the witness said he once worked two weeks for Briscoe. He never knew anything wrong about Mrs. Briscoe. He frequently stopped at Briscoe's for water, and had often seen persons' horses there. He never thought of being suspected when he stopped there.

Mr. Whitehead, for the defense, testified that he lived half a mile from Mrs. Briscoe. Defendant, at the time of the trouble, was working with witness, and he visited at Briscoe's waiting on the sick. Witness had seen defendant's horse hitched at Briscoe's house, but did not know whether Briscoe was at home at the time. Cross examined, witness said that the defendant came for medicine for Briscoe's children, and said that Briscoe was off cutting hay. On the night of the trouble, defendant left witness's to go to Briscoe's.

In rebuttal, the State again introduced Mrs. Briscoe, who stated that defendant, a short time before the difficulty, came to her house to get a pitchfork, and she asked him to go for the doctor, as she was afraid her baby would have fits. He could not find the doctor, but came back and sat up with witness all night.

*Beale & Autry*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. There is in the record a bill of exceptions

and none other.   To restate the proposition: The offense being defined, to wit, "If any person shall assault another, with intent to murder, he shall be punished," etc., therefore an indictment which alleges that the accused did assault A with intent to murder him is sufficient; because, the offense being defined in plain language, the indictment, if in the language of the offense, is "set forth in plain and intelligible words."

If this rule be sound in this case, the same reasoning through which this conclusion is reached forces upon us the inexorable conclusion that in each and all offenses the indictment will be sufficient, if it employs the language used in defining the offense. To this no one can give assent.   To test the rule:  "If any person shall assault a woman with intent to commit the offense of rape, he shall be punished," etc.   The indictment alleges that A did assault C, a woman, with intent her, the said C, to rape, and is good, because it follows the language of the offense.   Again: "If any person shall assault another with intent to commit the offense of robbery, he shall be punished," etc.   The indictment alleges that A did assault B with intent to commit the offense of robbery; and this is to be held good for the same reason.   Again: "The offense of burglary is constituted by entering a house by force, threats or fraud, at night,   *   *   *   with intent, in either case, of committing felony, or the crime of theft."   The indictment alleges that A did by force enter the house of B at night, without the consent of B, with the intent of committing felony, or theft, as the case may be.    Applying the reasoning in the Martin case, all felonies are "defined in plain language," and theft, whether felony or misdemeanor, is also "defined in plain language" as clearly and specifically as is murder, the analogy is perfect and the conclusion must be the same, to wit (quoting the language of Judge Gray): "If the language of the code, in defining this offense, is in plain language enough to be clearly understood, then it would seem to follow that an indictment charging a party in that language must be   *   *   *   a sufficient compliance with the law."   It is hardly necessary to state that an indictment for an assault to rob, to rape, or for burglary, which merely follows the language used in the supposed definition of these offenses, is wholly insufficient.

The plain fact is, that it was not the purpose of Articles 499, 500, 503, 504 and 505, to define offenses at all.   An assault is defined in Article 484; murder, maiming, rape, robbery and burglary are clearly defined in other articles.   Burglary is composed

of certain acts specifically named, done with intent to commit offenses elsewhere defined; and the pleader is to look, not alone to the articles which simply declare the punishment for assault with intent to commit other offenses, but also to the definition of the offenses intended to be committed by the assault, or the attempt. This is obviously correct, for Article 506 provides that "an assault with intent to commit any other offense is constituted by the existence of the facts which bring the offense within the definition of an assault, coupled with an intention to commit such other offenses, as of maiming, murder, rape or robbery."

The opinion in the Martin case seems to proceed upon the idea that our code defines an assault with intent to murder, and that the definition is different from that given to the same offense at common law. The fact is the offense is defined substantially in the same words, because an assault and murder are very nearly defined in our own code as at common law. Common law indictments for assault and for murder have always in this State been held sufficient, and this, too, where we have murder in the first and second degrees. This being the case, we should look to the common law precedents for indictments. Looking to the common law we shall certainly find no authority for holding the indictment sufficient. Neither Archbold, Russell nor Bishop sanction such pleading. They all hold that it must be alleged that the assault was made with malice aforethought. Bishop says it must be alleged that the accused "did make an assault * * * with intent then and there feloniously, willfully and of his *malice aforethought, to kill and murder*," etc. (2 Crim. Proc., 77.)

Being a felony "feloniously" was absolutely essential at common law, but not so with us. Now this form of indictment, without "feloniously and unlawfully," contains every element of the offense of murder, except the death of the party. Here we have charged the assault, instigated by malice aforethought, and with the intent to kill and murder; and under the authorities, as well as upon principle, this is sufficient. We could explain the reason of the distinction in forms of indictment between assaults to murder and assaults to rape, rob and attempts at burglary, made by the authorities, and especially by this court, if time permitted. The student, by a critical comparison of these offenses (those intended by the assault), will have no difficulty in discovering the reason for this difference in the form of the indictments.

In the Mills case (13 Texas Ct. App., 491), I wrote the opinion sanctioning the conviction under an indictment in like form with this. Not because I then believed the indictment good, but from deference to the opinion and superior abilities of the learned bench by whom this question was decided, I believed I would be justified in yielding my convictions to such more profound wisdom of others. But after more critical investigation of my duty to the citizen, and to the obligations resting upon me, to uphold the Constitution of my State, I feel impelled to give my views upon such vital questions as that presented by this appeal. I close my observations upon this subject of the binding effect of the decisions of courts upon other courts, with a citation from Mr. Bishop: "The prosecuting State does not seek a continued violation of its own fundamental laws, but rather a correction of whatever has been amiss; and, above all other reasons, the error is one which no number of repetitions, and no piling of adjudications upon adjudications, can make right or place beyond future review." (2 Crim. Proc., 587.)

I am of opinion that this conviction was had upon a bad indictment, and that the judgment should, for that reason, be reversed and the prosecution thereunder dismissed. A majority of the court, however, hold that the authorities in this State, emanating from the Supreme Court, as well as this court, amply support the sufficiency of the indictment. And this being the only question of moment the judgment is affirmed.

*Per curiam.* A majority of the court are of the opinion that the indictment in question, being a valid indictment at the time of the adoption of our Constitution, is not subject to the objections made to it by Judge Hurt. We can see no sufficient reason, and no practical good, at this late day, in disturbing, or even questioning, the previous decisions upon this subject.

*Affirmed.*