**James E. BAKER et al.**

**v.**

**Dr. George J. BETO et al.**

**Civ. A. No. 71–H–345.**

United States District Court,
S. D. Texas,
Houston Division.

March 13, 1972.

James De Anda, Corpus Christi, Tex., Ed Idar, Jr., San Antonio, Tex., Frances T. Freeman Cruz, Houston, Tex., for plaintiffs.

Robert Flowers, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This is an action originally filed by Plaintiffs, James E. Baker, Coy Ray Campbell, Sam Bernard, and Fred Arispe Cruz, convicted felons and prisoners of Texas Department of Corrections (TDC), pursuant to 42 U.S.C. § 1983, known as the Civil Rights Act of 1871. Sam Bernard asked to be, and he was, dismissed as a Plaintiff.

The remaining three prisoners, whose present status results from their total disregard of the rights of others, are asking, for themselves and as alleged representatives of their class, by way of rather ambiguous pleadings, for declarations by this Court that (1) the procedures followed by TDC in imposing prison discipline for infractions of its policies and rules of conduct violate Plaintiffs' fundamental rights of procedural due process and equal protection under the Fourteenth Amendment to the Constitution of the United States of America; (2) the rules and procedures relating to the handling of the mail, that is, reading, censoring, copying, withholding or delaying written communications, particularly between the prisoners (clients) and their attorneys, violate their fundamental First Amendment right of expression and deprive them of equal protection under the Fourteenth Amendment; and (3) the monitoring, observing or interfering with the attorney-prisoner (client) visits also violates such First Amendment right of expression and denies said prisoners equal protection under the Fourteenth Amendment.

The Plaintiffs herein, and others which they purport to represent as members of their class, have suffered the loss of "good time" and have been committed to solitary confinement while inmates of the Texas prison systems by virtue of disciplinary procedures followed in the prison system; and, they seek injunctive relief in connection with any favorable declarations of this Court, including orders to require the Defendants to recompute their respective good-time status; and to prohibit Defendants from continuing the present procedures for imposing prison discipline, the censorship of correspondence, and interference with attorney-prisoner (client) conferences.

This Court will first concern itself with the question of what rights does a prisoner accused of violating the rules of the prison system have? The Courts do generally recognize that the prisoner does not carry with him into prison all of the rights which the law-abiding citizens of this country enjoy. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). But, the earlier, extreme attitude that the prisoner was "for the time being a slave of the State"[1] has been relaxed in recent years. Although the relaxation of the sterner views of years past has been considerable, there is yet no real uniformity as to how extensive a prisoner's rights may now be. Some Courts appear to be excessively sympathetic to the convict and thus over-react to his plight, or so it seems to this Court. Others give more consideration to the extremely difficult task of maintaining order among prisoners, many of whom are incorrigible and violent.

▆▆▆ In this case, we are only concerned with the constitutional rights of

---

1. Ruffin v. Commonwealth, 62 Va. (21 Grat.) 790, 792, 1871, cited in Jackson v. Godwin, 400 F.2d 529, 532 (5 Cir., 1968).

the convicts to some degree of due process, equal protection of the laws, and freedom of expression. Direct access to the Courts to air grievances the prisoner has, regardless of how vicious or incorrigible he may be. This right is well recognized. But, as to the other constitutional protections named, this Court feels that only minimal safeguards are necessary. The degree of constitutional protection to be afforded the convicted criminal must necessarily be measured against the demanding requirements placed upon the prison system to control and discipline a large number of prisoners prone to unruliness, under very trying circumstances, and weighted in favor of the latter. Walker v. Blackwell, 411 F.2d 23 (5 Cir., 1969).

■ With regard to the procedures for disciplinary action which result in either a loss of "good time" or commitment in solitary confinement, the only issue relates to due process. There doesn't seem to the Court to be any issue with regard to lack of equal protection under the Fourteenth Amendment. The procedures that are followed affect all prisoners alike. That law-abiding citizens have more protection by way of due process than do prisoners of the state is not such a distinction as creates unequal protection. Both law-abiding citizens and convicted criminals are entitled to due process, but the process due the law-abiding citizen is considerably greater than the process which is due to any convicted criminal serving time in the penitentiary. The Court finds no facts which indicate any violations of the rights of the three named Defendants to claim a failure of equal protection under the Fourteenth Amendment with regard to disciplinary action.

■ ■ When a prisoner runs the risk of revocation of his "good time" already accrued, or of a sentence to solitary confinement, for an infraction of any of the rules and regulations of the Texas prison system, he is entitled to be heard as soon as practicable after the infraction is reported. The procedures set up by such prison system, and which the evidence shows are followed, require this. There is no evidence in this case which indicates any accused prisoner is given a formal, written notice of the charges against him at any particular period of time in advance of the hearing. However, the procedures provide, and the Court finds, that the accusations against the prisoner are fully explained to him before the hearing commences, and formally read to him when the hearing starts. The hearing is before a committee of three prison officials. At the time of this hearing to adjudicate the guilt or innocence of the prisoner and, if any, the punishment, the accused prisoner is given a full opportunity to tell his side of the story. The officer who has accused the prisoner of an infraction of a rule or regulation may sit on the committee. This may not be the better practice, but, standing alone, does not violate any constitutional right of the prisoner. The Court finds no constitutional abuse resulted to the named prisoners by the actions of the committees before whom they appeared.

■ The forfeiture of good time is permissible, and the Courts should not interfere with the decision of the disciplinary committee in forfeiting the good time of any prisoner. Sexton v. United States, 429 F.2d 1300 (5 Cir., 1970); Theriault v. Blackwell, Warden, 437 F.2d 76 (5 Cir., 1971).

■ The case of Grannis v. Ordean, 234 U.S. 385, 395, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), makes it clear that the fundamental requisite of due process of law is the opportunity to be heard. Once that is granted and minimal procedures followed to insure that the prisoner may, if he desires, speak his piece without interference, there can be no clear showing of arbitrary or capricious action which makes the forfeiture of good time invalid.

■ No Court should camouflage its decision as to what it thinks would be a fair and humane procedure in a particular case, with a constitutional mantle.

The Fifth Circuit has been very chary, and rightly so, about interfering in the internal operations and administration of prison systems and this policy has been followed except in exceptional cases. Diehl v. Wainwright, 5 Cir., 419 F. 2d 1309. A prisoner's complaint about the lack of medical attention did not, in the case of Thompson v. Blackwell, 374 F.2d 945 (5 Cir., 1967), "rise to the level of stating facts which would make out a case of an abuse of discretion on the part of the prison authorities." The Federal Court should refuse to interfere with the internal administration of any state prison system except in the most extreme cases involving a shocking deprivation of fundamental rights. Baldwin v. Smith, 446 F.2d 1043 (2 Cir., 1971). This rule is also followed in Rodriguez v. McGinnis, 451 F.2d 730 (2 Cir., 1971).

■ The TDC does not permit a prisoner to have legal counsel or counsel substitute at such disciplinary hearing, nor necessarily allow the prisoner to be confronted by all the witnesses against him. He is not permitted to cross-examine any of the witnesses. The denial of these rights which the law-abiding citizen customarily has does not constitute lack of due process for the convicted felon. These hearings are carried forward in good faith and are not merely a formality to be gotten over with as quickly as possible. The evidence reflects that many prisoners have been absolved at such hearings and this fact attests to the fairness of the hearings as conducted by the prison officials.

■ There is provided adequate protection for an accused prisoner against errors and mistakes which might occur at the disciplinary hearing. The prisoner is not entitled to be present at any review of his case, but his absence does not offend due process, since no evidence is taken during review proceedings. Decisions of the disciplinary committee are customarily reviewed by the warden, except as to minor infractions, and he may approve, modify or disapprove the action

taken by the committee. The Court does not consider this review to be perfunctory.

In those cases where the prison disciplinary committee recommends forfeiture of an inmate's statutory "good time," a review by the state disciplinary committee is automatic, and it must approve such action. The Director of the Texas Department of Corrections is the final reviewing authority in matters of this kind.

■ Where the disciplinary committee imposes solitary confinement, or a lesser punishment, although the prisoner is entitled to write to Dr. Beto and request review, the Court recognizes that the punishment is already under way before the report is seen by the Director. However, this fact alone does not abrogate due process. The Director does not defer to the judgment of the disciplinary committee, nor to the action of the prison warden; and, the Director may intervene at any time if it appears to him to be reasonably necessary.

This Court has already indicated, and it here concludes, that the procedures followed by the Texas Department of Corrections in disciplinary action generally, and as heretofore followed in dealing with those three Plaintiffs, James E. Baker, Coy Ray Campbell and Fred Arispe Cruz, when disciplinary action was called for, has not offended any of the constitutional rights afforded to the prisoners generally, or the three named prisoners.

■ In none of the cases was the testimony sufficient to show arbitrary, capricious or fraudulent action on the part of the prison officials. The Court has found that the committee followed the procedures provided and this Court is not required to review the evidence, even if there be a sharp conflict in the testimony, presented to the committee. The written report in each case was in evidence. In each case, the Defendant had an opportunity to tell his side of the story, after he was advised as to what the charges were against him. This is

all the committee needed to do. Consequently, the action as taken by the prison officials, and in particular the disciplinary committee, is conclusive.

The prisoners (including those named and the prisoner inmates of their alleged class) also complain in this civil suit that prison officials read, censor, copy, withhold and delay communications between them and their respective attorneys. The contentions of the Petitioners indicate "copying, withholding and delaying" of such communications is incidental to and results from the principal complaint against the prison officials, that is, "reading and censoring" of attorney-prisoner mail. Petitioners place considerable stress on the sanctity of the attorney-client privilege, and claim such censorship nullifies it, but they fail to recognize that the privilege has limitations and is not established as to the contents of any particular letter merely by an announcement from the prisoner, or his counsel, that it ought to be.

The privilege which protects the confidentiality of the attorney-client relationship was originally established on the ground of public policy in civil cases. It was extended in Texas to criminal cases in Orman v. State, 22 Tex.App. 604, 3 S.W. 468 (1886). The rule is now also predicated on Article 38.10 of the Code of Criminal Procedure, and extended to civil cases under Williams v. Williams, Tex.Civ.App., 108 S.W.2d 297 (1937). So, the rule is applied the same in both criminal and civil cases. At this point, in order to assist in determining its applicability here, it seems appropriate to discuss in some detail what attorney-client privilege really does for the client. It is not a broad privilege that can be invoked to cover everything the client and his attorney may say to each other, orally or in writing, or that they, or either of them, may do as a result of what was said or written. And, the violation of the correctly construed privilege does not, of itself, raise a constitutional question.

In Comercio E. Industria Continental, S.A. v. Dresser Industries, Inc., et al., 19 F.R.D. 513 (D.C.1956), United States District Judge Irving R. Kaufman says that the privilege is available, (1) where legal advice of any kind is sought; (2) from a professional legal advisor as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) or at his instance are permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except where the protection is waived. It follows that a communication made in confidence must necessarily be a secret one, and when known to a third person it is no longer secret. 97 C.J.S. Witnesses § 284, Note 40; Clayton, et al v. Canida, Tex.Civ.App., 223 S.W.2d 264 (1949); and Morton v. Smith, Tex.Civ.App., 44 S.W. 683 (1898).

We must remember that these prisoners are not trying to urge the privilege for their protection against the effects of any statements given to their respective lawyers at or prior to the trial of the criminal case which resulted in their present incarceration. They have already been convicted. Nor is any one of the Petitioners trying to claim the privilege concerning a crime for which he could be tried and convicted in the future. They are not troubled about information given prior to a hearing concerning some infraction, large or small, of the prison rules. These prisoners are insisting on the privilege in connection with correspondence between themselves and their attorneys regarding prison conditions and their own legal theories as to why certain prison regulations are invalid, or, at least, should not be enforced as to them. The claimed privilege does not protect this sort of correspondence. Nor are they protected if their hope is, and it may very well be, to obtain guidance in creating situations upon which another civil suit which attacks the procedures of the prison system might be predicated. The contents of the letters between Petitioners and their attorneys, offered and ad-

**1270**

mitted together as Plaintiff's Exhibit 4, do not warrant the application of the attorney-client privilege rule, as this Court understands it.

 These convicted inmates also regard the censorship of prisoner mail as abrogating their First Amendment rights of expression. In other words, Plaintiffs ostensibly feel inhibited in being unable to write, in letters to their attorneys, whatever they want to say about prison officials and prison conditions, or about anything else, without the prison officials finding out about it. In dealing with this alleged constitutional deprivation, the fact that these prisoners are already convicted felons and are not in the category of "awaiting trial" must be taken into account. This Court must also acknowledge that the " 'control of mail to and from prisons is a necessary adjunct to penal administration.' " Schack v. Wainwright, 391 F.2d 608 (5 Cir., 1968). The attorney-client privilege not being applicable here, no consideration will be given to it.

This Court finds that, based upon the testimony of Dr. Beto, and other evidence in the record, censorship of the mail is justified because of the serious and difficult problem of security. The fact that some prison systems do not require mail censorship such as the Texas system enforces is not pertinent.

 There might be some justification for dispensing with censorship of attorney-client mail in instances where the Fifth Amendment protection that, "No person . . . shall be compelled in any criminal case to be a witness against himself, . . . " should be afforded a prisoner. This sort of situation would be very unusual and obviously is not present in this civil suit. The nature of the mail between Petitioners and their lawyers, as shown by the evidence in this instant case, is not such as to require it to be handled differently from other mail. It may be dealt with under the general rules of mail censorship which are in effect in the Texas prison system.

 This Court recognizes that prisoners should have access to the Courts, and it realizes that some Courts suggest this requires uncensored communication with counsel. However, this Court does not agree with such suggestion. The so-called "jailhouse lawyers" may give assistance, and, with the help otherwise available, no prisoner should be seriously handicapped in getting the attention of the Courts. What inconvenience to the prisoner, if any, that might arise would not reach the unconstitutional level. Mail addressed to any Federal judge or any state district or court of appeals judge need not be formal in nature, and should be immediately forwarded without censorship and without delay, except as is necessary to be sure nothing which might be of harm to the Court is enclosed. Coleman v. Peyton, 362 F.2d 905 (4 Cir., 1966). Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L. Ed. 1034.

TDC can make reasonable rules regarding censorship within the limits set forth above, and this it has already done. It can make exceptions, from time to time, with regard to the handling of attorney-client mail, pursuant to such rules, but TDC was not required to as to Baker, Campbell and Cruz and other prisoners in their class. Extreme circumstances such as would necessitate a variation from the normal in censorship are not before this Court.

 In addition to the objections regarding censorship of their mail, the prisoners complain of interference with confidential visits between the prisoners and their attorneys. This activity, they say, has seriously impeded the preparation of this case, but, without explaining how. It is little short of ridiculous for them to complain about the preparation of any case which has been as well prepared as this one has been by their attorneys. These prisoners apparently have other civil suits involving what

they consider other constitutional questions as to prison procedures. They plead there is a chill in the air around their First Amendment right of expression. We heard the named prisoners testify and view this with some skepticism. In any event, the evidence showed and this Court so finds, that the rules as promulgated by TDC and followed by the prison officials are reasonable and provide only for observance of the prisoner and his visitor. No attempt is made to listen in on any part of the conversation. Such physical observation is obviously necessary for the maintenance of internal security and order. These prisoners are suffering no deprivation of First Amendment rights of free speech by such observation.

As Petitioners' final complaint in this action, they request relief because equal protection under the laws is being denied them by actions of the prison officials, including Dr. Beto, in enforcing, generally, the rules of the Texas Department of Corrections.

 At this point, we should not forget that these prisoners, upon their incarceration, have retained, in varying degrees according to the circumstances, only minimal protections as to due process and freedom of expression. While the constitutional rights of prisoners to due process and freedom of expression, in diluted form, are easy to understand, it is difficult for this Court to see how a prisoner could retain equal protection rights to any degree at all, when their very incarceration evidences the lack of it. However, the Petitioners allege, generally, a lack of equal protection under the laws as guaranteed by the Fourteenth Amendment, and we assume the prisoners have some minimal equal protection. Nevertheless, the disparity and unequalness as between the prisoners' rights and the rights of others not so incarcerated, including the prison officials and employees, as to the loss of "good time," solitary confinement, censorship of the mails and observance of attorney-client visits, is adequately justified. The prison officials must be allowed wide discretion in maintaining order and discipline. Royal v. Clark, Warden, 447 F.2d 501 (5 Cir., 1971). This Court concludes there is no showing by Petitioners of any arbitrary disregard of or infringement upon their diluted equal protection rights so as to outweigh the need for order and discipline, or constitute an abuse of the discretion resting with the prison officials.

 The Plaintiffs named have all been punished by solitary confinement, by the loss of considerable "good time" and, except as to Campbell, have been reduced to "Class III" inmate status, which earns no "good time." But, the Court finds there was no abuse by the Defendant Dr. Beto, or Defendant Lamer, or any other of the prison officials, of their discretionary duties, no arbitrary or capricious action, in assessing such penalties, and, in each case, the prisoners were granted the minimal protections to which they were entitled under the Constitution of the United States. Their requested relief of the return of forfeited "good time" and reclassification to "Class I" inmates is denied. And, injunctive relief as to disciplinary procedures is refused.

 The censorship of the attorney-client mail, and the observance of the physical activities of the prisoners and their attorneys during prison visits have not been unduly burdensome to the prisoners and have not seriously restricted their legitimate dealings with their attorneys. The Petitioners are not entitled to injunctive relief in this regard, and such relief is denied.

The foregoing constitute the findings of fact as made by the Court and its conclusions upon which this Court denied the relief prayed for by Petitioners. This is a final judgment.