Ex parte George HENDERSON.

No. 69086.

Court of Criminal Appeals of Texas, En Banc.

Feb. 16, 1983.

---

Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

This is a pro se application for writ of habeas corpus filed pursuant to Article 11.-07, V.A.C.C.P. The petition alleges that "[p]etitioner's re-incarceration on the same sentence that he has already completed and discharged violates the double jeopardy and due process rights as guaranteed by the U.S. Constitution."

The findings of fact filed by the trial court, which are supported by the record, show that petitioner was convicted on May 9, 1978, pursuant to a plea of guilty, of the offense of possession of heroin, and punishment assessed at four years imprisonment. With credit for time served in the Dallas County Jail, Art. 42.03, Sec. 4, V.A.C.C.P., petitioner began serving this sentence on March 10, 1978. Thereafter, on March 21, 1980, twenty-four months and eleven days after beginning his sentence, petitioner was released on mandatory supervision. Art. 42.12, V.A.C.C.P.[1] On November 5, 1981,

---

1. Art. 42.12, Sec. 15(c), V.A.C.C.P. provides for mandatory supervision and states as follows:

"(c) A prisoner who is not on parole, ex-

approximately 20 months after his release on mandatory supervision, petitioner was returned to the custody of the Texas Department of Corrections (TDC) on the basis of allegations that he had violated the conditions of his release, to-wit: by failing to submit monthly reports, changing residence without written permission, and traveling beyond designated geographical limits without written permission.

On January 26, 1982, William P. Clements, Jr., then Governor of the State of Texas, issued a proclamation revoking petitioner's mandatory supervision release. Art. 42.12, Sec. 22, V.A.C.C.P.

Petitioner now maintains that the good conduct time which he had accrued prior to his release was in the nature of a vested right that cannot be lawfully taken from him. He argues that because his actual "calendar time" served plus his accrued good conduct time equalled the maximum term to which he had been sentenced, when he was released on mandatory supervision he had fully discharged said sentence; characterizing mandatory supervision as "commutation of his sentence for good behavior," petitioner further claims that his being returned to the custody of TDC violated his constitutional rights under the due process and double jeopardy provisions of the United States Constitution.

Art. 42.12, Sec. 2(d), V.A.C.C.P., defines mandatory supervision as follows:

" 'Mandatory supervision' shall mean the release of a prisoner from imprisonment but not on parole *and not from the legal custody of the State,* for rehabilitation outside of prison walls under such conditions and provisions for disciplinary su-

pervision of the Board of Pardons and Paroles may determine. *Mandatory supervision may not be construed as a commutation of sentence or any other form of executive clemency."* (Emphasis added)

The nature of a convict's interest in his accrued good conduct time is an issue that has not· yet been specifically addressed by this Court in the context of the relatively recent development of mandatory supervision.

■ Article 6181–1, Sec. 4, V.A.C.S.,[2] deals with the forfeiture of good conduct time and provides as follows:

"Good conduct time applies only to eligibility for parole or mandatory supervision as provided in Section 15, Article 42.12, Code of Criminal Procedure, 1965, as amended, and shall not otherwise affect the inmate's term. *Good conduct time is a privilege and not a right.* Consequently, if during the actual term of imprisonment in the department, an inmate commits an offense or violates a rule of the department, all or any part of his accrued good conduct time may be forfeited by the director. The director may, however, in his discretion, restore good conduct time forfeited under such circumstances subject to rules and policies to be promulgated by the department. *Upon revocation of parole or mandatory supervision, the inmate loses all good conduct time previously accrued,* but upon return to the department may accrue new good conduct time for subsequent time served in the department." (Emphasis added)

cept a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced. A prisoner released to mandatory supervision shall, upon release, be deemed as if released on parole. To the extent practicable, arrangements for the prisoner's proper employment, maintenance, and care shall be made prior to his release to mandatory supervision. The period of mandatory supervision shall be for a period

equivalent to the maximum term for which the prisoner was sentenced less calendar time actually served on the sentence. The time served on mandatory supervision is calculated as calendar time. Every prisoner while on mandatory supervision shall remain in the legal custody of the institution from which he was released but shall be amenable to the orders of the Board."

2. Effective August 29, 1977 and replacing Article 6184*l*, V.A.C.S.

Under this provision, when an inmate is released on mandatory supervision and he thereafter violates the express conditions of such release, upon subsequent revocation of mandatory supervision the convict loses all previously accrued good conduct time. We find this provision dispositive of applicant's statutory claim.

█ As discussed by the United States Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, while the United States Constitution itself does not guarantee any right to good conduct time credit, once a State provides such a right, it is "sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [the convict] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not *arbitrarily* abrogated." (Emphasis added) See also *Keenan v. Bennett,* 613 F.2d 127 (5th Cir.1980); *Baker v. Beto,* 349 F.Supp. 1263 (S.D.Texas 1972).

█ Accordingly, good-time credit is not a vested right, but rather is a privilege which may be forfeited, either by violating TDC's rules while in its custody, or by violating the guidelines of a conditional release

program. *Ex Parte Boyd,* 152 Tex.Cr.R. 164, 212 S.W.2d 156 (1948); *Ex Parte Morris,* 626 S.W.2d 754 (Tex.Cr.App.1982).

█ Therefore, when petitioner was released from the actual custody of TDC to mandatory supervision, he remained "in the legal custody of the institution from which he was released" for the entire remainder of his original sentence. Art. 42.12, Sec. 15(c), V.A.C.C.P. When petitioner thereafter violated the express conditions of his release, he was fully amenable to the Board's decision to return him to the custody of TDC, as long as appropriate procedures were employed to comply with due process.[3] *Wolff,* supra.

All relief requested is accordingly denied.

TEAGUE and MILLER, JJ., concur in the result.

CLINTON, J., dissents.

---

**3.** A federal mandatory release scheme, 18 U.S.C. § 4163, 18 U.S.C. § 4164, similar to Art. 42.12, V.A.C.C.P., has been consistently upheld. *Lazard v. U.S.,* 583 F.2d 176 (5th Cir.1978); *Coronado v. United States Board of Parole,* 540 F.2d 216 (5th Cir.1976); *Lambert v. Warden, U.S. Penitentiary,* 591 F.2d 4 (5th Cir.1979); *Granville v. Hogan,* 591 F.2d 323 (5th Cir.1979); *Frick v. Quinlin,* 631 F.2d 37 (5th Cir.1980).