## Ex parte Jack Fenner ELLIOTT.

### No. 69964.

Court of Criminal Appeals of Texas.

Feb. 24, 1988.

Melvyn Carson Bruder, Dallas, for appellant.

John B. Holmes, Jr., Dist. Atty., Deborah S. Williams & Calvin A. Hartmann, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

■ This is an application for a writ of habeas corpus pursuant to Art. 11.07, V.A. C.C.P. Applicant was convicted of the offense of gambling promotion, V.T.C.A., Pe-

nal Code, § 47.03(a)(2), and sentenced to a seven-year term of confinement in the Texas Department of Corrections with a five-thousand dollar fine. Applicant has since been released on parole after serving a part of his sentence but remains "in custody" for purposes of this application.[1]

Applicant asserts that the indictment in cause number 349,395–B was fundamentally defective as it did not allege that applicant received or recorded "a bet or offer to bet." See § 47.03(a)(2), supra. We agree and grant the requested relief.

■ Initially, we note that if the indictment in the case at bar is fundamentally defective, so as not to charge an offense against the laws of Texas, such indictment may be challenged in a post-conviction writ of habeas corpus. *Ex parte Bartmess*, 739 S.W.2d 51 (Tex.Cr.App.1987); *Standley v. State*, 517 S.W.2d 538 (Tex.Cr.App.1975); *Ex parte Roberts*, 522 S.W.2d 461 (Tex.Cr. App.1975). The indictment in the present case states in pertinent part that applicant did:

> intentionally and knowingly receive and record and offer to bet, over the telephone, on a sporting event, to-wit: a football game played between the Pittsburg (sic) Steelers and Cleveland Browns on November 22, 1981, from a person known only to the Grand Jury as Player 77.

It is further presented that in Harris County, Texas, JACK FENNER EL-LIOTT, hereafter styled the Defendant, heretofore on or about NOVEMBER 22, 1981, did then and there unlawfully intentionally and knowingly receive and record and offer to bet, in person, on a sporting event, to-wit: a football game played between Pittsburg (sic) Steelers

1. Art. 42.18, § 2(a) V.A.C.C.P., Vernon (1988) statutorily defines parole as a release of a prisoner from imprisonment, but not from the legal custody of the State. In addition, Art. 42.18, § 8(a), V.A.C.C.P., which went into effect September 1, 1987 and effectively replaced a similar provision in repealed Art. 42.12, § 15(f)(3), states in pertinent part:

> Every prisoner while on parole shall remain in the legal custody of the State and shall be amenable to conditions of supervision ordered by the board.

Moreover, the fact that applicant is no longer actually confined in the penitentiary is not dispositive of his standing before us, since during his term of parole he is "in custody" and "confined" in terms of statutory construction. See Art. 11.21, V.A.C.C.P. See also *Ex parte Henderson*, 645 S.W.2d 469 (Tex.Cr.App.1983); and *Ex parte Peel*, 626 S.W.2d 767 (Tex.Cr.App. 1982). See and compare *Ex parte Renier*, 734 S.W.2d 349 (Tex.Cr.App.1987).

and Cleveland Browns on November 22, 1981, from a person known only to the Grand Jury as Player 77.

██ To be valid, an indictment must charge each essential element of the offense sought to be charged. See *Chance v. State*, 563 S.W.2d 812 (Tex.Cr.App.1978); *Ex parte Cannon*, 546 S.W.2d 266 (Tex.Cr. App.1976); *Ex parte Jones*, 542 S.W.2d 179 (Tex.Cr.App.1976); *Standley*, supra. It is obvious that the above-mentioned indictment fails to allege that applicant received or recorded "a bet or offer to bet." Instead of alleging applicant received or recorded *an* offer to bet, the indictment alleged that he did "receive and record an*d* offer to bet ... on a sporting event."[2] The indictment in the case at bar, when read in its logical order, alleges that applicant "received and recorded and offered to bet on a sporting event." Read in this logical fashion, the indictment does not allege that the applicant "received and recorded a bet or offer to bet," which would be necessary to allege gambling promotion under § 47.03(a)(2), supra. See *Adley v. State*, 675 S.W.2d 240 (Tex.App.1984), *Odom v. State*, 628 S.W.2d 804 (Tex.Cr. App.1982); *Rush v. State*, 576 S.W.2d 628 (Tex.Cr.App.1978). The bet or offer to bet is an essential element of the offense of gambling promotion and therefore must be pled and proved. See *Smith v. State*, 658 S.W.2d 172 (Tex.Cr.App.1983); *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr.App.1983); *Adley*, supra; *Odom*, supra; *Rush*, supra. The post-action phrase, "... on a sporting event, to-wit: a football game played between the Pittsburg (sic) Steelers and the Cleveland Browns on November 22, 1981, from a person known only to the Grand Jury as Player 77," does not furnish the fatal omission. The act of receiving or recording a sporting event or football game is simply not a violation of the gambling promotion law. Section 47.03(a)(2).

A bet, as defined by V.T.C.A., Penal Code, § 47.01(1) is an agreement that, depending on chance, one stands to win or lose something of value. In the instant case, absent an allegation in the indictment

that the applicant received a bet or offer to bet, or that he recorded a bet or offer to bet, the indictment fails to state a violation of the gambling promotion laws. Therefore, it is fundamentally defective.

The application for writ of habeas corpus is granted, and the prosecution under the indictment in trial court cause number 349,395–B is hereby dismissed. A copy of this opinion shall be sent to the Board of Pardons and Paroles.

MILLER, J. concurs in the result.

TEAGUE, Judge, dissenting.

I respectfully dissent for several reasons, namely, this Court's majority opinion does not subscribe to what a majority of this Court recently expressly stated and held in *Ex parte Renier*, 734 S.W.2d 349 (Tex.Cr. App.1987); does not expressly overrule *Ex parte Renier*, supra; and erroneously grants Jack Fenner Elliott, hereinafter applicant, relief on the wrong theory.

This is an application for the post-conviction writ of habeas corpus that was filed on behalf of applicant by counsel. In order to invoke this Court's jurisdiction pursuant to the provisions of Art. 11.07, V.A.C.C.P., all that counsel asserts is that "The Applicant is currently restained of his liberty and is in the constructive custody of O.L. Mc Cotter [sic], Director of the Texas Department of Corrections, having been released on parole after serving a part of a seven (7) year sentence assessed after his conviction for gambling promotion in [trial court] Cause No. 349,395. Additionally, the Petitioner is suffering disabilities as a result of such conviction and sentence." Applicant, however, never specifically informs us of what kind of "parole" he is presently on or the terms and conditions of that parole, and does not specifically inform us of what "disabilities" he might be presently suffering. Literally read, as this Court's majority opinion of *Ex parte Renier*, supra, states is the way that it must be read, the provisions of Art. 11.07, supra, are not concerned with whether a defendant is suf-

---

**2.** The act of "offering to bet" is not an offense    denounced by § 47.03(a)(2).

fering from adverse collateral legal consequences or adverse legal disabilities as a result of a felony conviction that he might have sustained, the validity of which he challenges; that statute, literaly read, expressly limits itself to whether a defendant, who is then in "custody", and has suffered or sustained a final conviction, is entitled to be released from "custody" because his conviction is void for some legal reason.

Although the record is clear that applicant is not actually or physically confined or restrained, as those terms are customarily and normally understood, because he has been released from "confinement" to parole, the majority opinion nevertheless grants him relief. Given what this Court expressly stated not once but several times in its majority opinion of *Ex parte Renier*, supra, regarding the requirement that a defendant may not attack a prior felony conviction pursuant to the provisions of Art. 11.07, supra, unless he is "confined", why is applicant entitled to use the provisions of Art. 11.07, supra, to invoke this Court's jurisdiction to obtain relief?

I believe that the bench and bar of this State are entitled to more than an inapplicable footnote explanation, (inapplicable, inter alia, because of what a majority of this Court expressly stated and held in *Ex parte Renier*, supra,), why this applicant, who is not "confined", is entitled to relief, and why the applicant Renier, who also was not "confined," was not entitled to relief pursuant to Art. 11.07, supra, as a majority of this Court so held in *Ex parte Renier*, supra.

A majority of this Court expressly stated in *Ex parte Renier*, supra, that before one might seek relief from a prior void felony conviction from this Court, pursuant to Art. 11.07, supra, he must both be "finally convicted" and "confined." If the individual satisfies those two pre-requisites, he must further establish that this Court has the authority to "order his release from custody." Applicant has not alleged that he is in the "actual custody" of anyone, nor has this Court ordered that he will be released from any and all adverse legal collateral consequences of the void conviction

that he attacks. This Court orders his indictment dismissed and the Clerk of this Court to send a copy of this opinion to the Board of Pardons and Paroles. The Board, which is not a party to this lawsuit, is, understandably, not ordered to do anything. What is the Board supposed to do when it receives a copy of this Court's opinion? The majority opinion does not order the Board to terminate applicant's parole. Legally, what must it do when it receives a copy of this Court's opinion?

In *Ex parte Renier*, supra, a majority of this Court expressly stated the following: "Article 11.07 is reserved for an applicant in 'confinement,' which by definition is a harsher condition than 'restraint.'" (353). The majority opinion did not allow for any exceptions to its statement. Thus, under *Ex parte Renier*, supra, if applicant is not "confined", and is merely under some form of "restraint", he cannot seek relief from his alleged void felony conviction pursuant to Art. 11.07, supra, in this Court. He must seek relief in another forum.

There is no question that applicant is "restrained", as that word is defined in Art. 11.22, V.A.C.C.P. "By 'restraint' is meant the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." However, is applicant "confined"? The word "confined" is not defined in Chapter 11 of the Code of Criminal Procedure, nor any other place in the Code, nor in the Penal Code for that matter. Although Art. 11.21, V.A.C.P., states that "The words 'confined', 'imprisoned', 'in custody', 'confinement', 'imprisonment', refer not only to the actual, corporeal and forcible detention of a person, but likewise to any coerceive measures by threats, menaces or the fear of injury, whereby one person exercises a control over the person of another, and detains him within certain limits", I find nothing in this record that might reflect or indicate that applicant is being subjective to "any coercive measures of threats, menaces or the fear of injury."

Art. 11.07, supra, as literally read and construed by the majority opinion in *Ex parte Renier*, supra, mandates that before the provisions of that statute might be invoked in order to give this Court jurisdiction, the individual must be suffering from a "final conviction" and must also be "in confinement", or, if not in actual confinement, he must be subject to "coercive measures by threats, menaces or the fear of injury." As the terms "confined" and "constructive custody" are defined, applicant's status, as set forth in his application, does not meet either definition.

Without any explanation, the majority opinion, in a footnote, advises us that applicant is " 'in custody' and 'confined' in terms of statutory construction." (Fn. 1, p. 763). It then advises us to "See Art. 11.21, V.A.C.C.P." Art. 11.21, supra, however, is of no help because applicant is not by the terms of that statute "in custody". The majority, in the same footnote, then tells us to "See also *Ex parte Henderson*, 645 S.W.2d 469 (Tex.Cr.App. 1983); and *Ex parte Peel*, 626 S.W.2d 767 (Tex.Cr.App.1982)." I have "seen" those two opinions, but find they are also of no help. In *Ex parte Henderson*, supra, the defendant was released from the penitentiary on mandatory supervision, which was subsequently revoked. By the provisions of Art. 42.12, § 2(d), V.A.C.C.P., a convict released from the penitentiary on "Mandatory Supervision" is not released from the legal custody of the State. He still remains within the legal custody of the State. The defendant Henderson sought to have his sentence credited with the "good conduct time" he had accrued prior to his release on mandatory supervision. This Court merely looked to the provisions of Art. 6181-1, Sec. 4, V.A.C.S., and concluded that "Under this provision, when an inmate is released on mandatory supervision and he thereafter violates the express conditions of such release, upon subsequent revocation of mandatory supervision the convict loses all previously accrued good conduct time." (472). Although the defendant's contention was brought pursuant to Art. 11.07, supra, there is not one single word of discussion relating to the fact that

even if this Court had agreed with applicant he would have been entitled to release from confinement. Of course, at that time this Court had not given birth in its "Laboratory of Horrors" to the twisted creature *Ex parte Renier*, supra. I have also "seen" *Ex parte Peel*, supra, but find it is also of no help. There, the defendant, who was then incarcerated in a Federal Correctional Institution, and who still owed the State of Texas "time", asserted that he was entitled to consideration for the grant of additional good conduct credit on his Texas sentence while incarcerated in the Federal Correctional Institution. For reasons stated in its opinion, this Court correctly denied applicant any relief. The defendant Peel also sought relief pursuant to Art. 11.07, supra, and this Court considered his application pursuant to that statute. However, there is nothing in the opinion that discusses the fact that even had this Court agreed with the defendant it would have ordered him released from any confinement that he might be suffering. Again, the monster creature *Ex parte Renier*, supra, had not then been given birth by this Court. The majority opinion lastly in its footnote advises us to "See and compare Ex parte Renier, [supra]."

Under *Ex parte Renier*, supra, if this Court finds that applicant meets the above pre-requisites, and also finds there is no need for a hearing, and further finds in applicant's favor, "the court shall enter its judgment ... ordering his release, as the law and facts may justify." Although a present majority of this Court believes that Art. 11.07, supra, should be read as though it is in a vaccuum, in this cause it doesn't even adhere to what it believes when it merely sets aside applicant's indictment. Although the majority has agreed with applicant that his prior felony conviction is void, it does not order him released from custody, which is understandable because he is not in custody. Is he still on parole? The majority opinion does not order his parole terminated, does not order him released from parole supervision, and does not set aside whatever the Board of Pardons and Paroles has done or is now doing!

What is the Board of Pardons and Paroles, which entity is not a party to this law suit, supposed to do when it receives a copy of this Court's majority opinion?

Given what this Court expressly stated and held in *Ex parte Renier*, supra, it appears to me that this defendant is in the wrong courthouse. He might be entitled to seek relief in another courthouse, but under *Ex parte Renier*, supra, the doors to this courthouse are not open to him.

However, is the majority opinion now convinced, sub silentio, that it erred in what it expressly stated and held in *Ex parte Renier*, supra, and is now ready to put the post-conviction writ of habeas corpus train back on the track that it was on? If so, it should not just simply sub silentio overrule *Ex parte Renier*, supra, in a footnote; it should do so in large print in the body of the opinion.

If one carefully reads *Ex parte Renier*, supra, and what this Court has previously written in cases that were brought pursuant to Art. 11.07, supra, I believe he will find as I have that *Ex parte Renier*, supra, turns the application for the writ of habeas corpus (post-conviction) on its head in the manner in which it interprets Art. 11.07, supra.

I will not repeat here all of what I stated in the dissenting opinion that I filed in *Ex parte Renier*, supra. However, I will repeat here the statement that "Our habeas corpus law has maintained [its] basic structure for at least 130 years. Nevertheless, the distinction between original and appellate jurisdiction has often become blurred, due in no small measure to the enactment in 1943 of what is now Art. 11.07, Sec. 2, V.A.C.C.P." (358). I believe it is sufficient to state that given the history of habeas corpus in this State, and this Court's decisions decided pursuant to Art. 11.07, supra, it should be apparent to almost anyone that the Legislature of this State has given this Court exclusive jurisdiction to resolve any claim that a prior felony conviction is void, and for that matter any other post-conviction claim for relief. In *Ex parte Renier*, supra, this Court relinquished that authority. After *Ex parte Renier*, supra, I predict that we will see a return to the days of *State v. Briggs*, 171 Tex.Cr.R. 479, 351 S.W.2d 892 (1961), when it became necessary for this Court, in order to protect its "turf", to give the law a meaning never before imagined by mortal man. I will pose a very simple question: Assuming that this Court has granted a petition for discretionary review and affirms the judgment of the trial court, and the defendant, who is then on bail and not in custody nor subject to deprivation of his freedom *at that time*, thereafter files an original application for writ of habeas corpus with the trial judge or some other district court judge, under *Ex parte Renier*, supra, what is to prevent that judge from granting the applicant relief, without any review by this Court? By this Court relinquishing in *Ex parte Renier*, supra, its position as "King of the Mountain" when it comes to post-conviction claims, I predict that we will also see a return to another kind of era.

In *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), the Supreme Court of the United States held that the Fourteenth Amendment requires that the States must afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees. In the concurring opinion that he filed, Justice Clark expressed his pleasure in learning that so many States of the Union had at that time provided a procedure for testing federal claims in the state courts and "thus relieving the federal courts of this ever-increasing burden."

In 1949 Illinois enacted the Illinois Post–Conviction Hearing Act and became the first state to upgrade its judicial machinery by creating a new, modern postconviction remedy. By 1965, twelve more states had created a new and principal postconviction remedy by the enactment of a statute or promulgation of a rule of court. Texas became one of those states when Art. 11.-07, supra, became effective on January 1, 1966. This Court's decision of *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App.1967), laid the groundwork that it would be this Court, and no other court, that would ulti-

mately decide post-conviction claims. *Ex parte Renier*, supra, however, changed all of that.

There should be no question that in very recent times this Court has "tightened up" when it comes to deciding post-conviction claims for relief. Although without precedent, this Court in *Ex parte Holt*, 736 S.W.2d 133 (Tex.Cr.App.1987), held that even though it was obvious that the defendant was confined in the Department of Corrections, his application was nevertheless dismissed because he failed to expressly and specifically allege therein that he was "confined" and failed to expressly and specifically allege that he was suffering adverse legal consequences. Also see *Ex parte Cacopardo*, 738 S.W.2d 289 (Tex.Cr. App.1987), another unpublished opinion by this Court. Thus, given *Ex parte Renier*, supra, and what this Court has been doing, and the facts of this cause, why does this Court entertain applicant's petition? Why does this Court continue to entertain applications for the writ of habeas corpus (post-conviction) pursuant to Art. 11.07, supra, when it does not and cannot grant the defendant outright release, even when it sustains his contention?

In his attack upon his conviction, applicant asserts that (1) "Under the charge of the trial court, the general verdict of the jury may have rested upon an unconstitutional ground" and (2) "The indictment fails to state an offense against the laws of the State of Texas." The majority opinion holds that "the indictment does not allege that the applicant 'received and recorded a bet or offer to bet,' which would be necessary to allege gambling promotion under § 47.03(a)(2), supra," and that under *Adley v. State*, 718 S.W.2d 682 (Tex.Cr.App.1986), which held that § 47.03(a)(2), which proscribed receiving a bet was unconstitutionally vague and unenforceable as a penal sanction, applicant is entitled to relief.

Applicant was charged by indictment with, inter alia, "receiving and recording and [sic] offer to bet." The jury, however, was instructed, inter alia, that it could find applicant guilty if it found that he "did then and there intentionally or knowingly receive or record or offer to bet." The jury's verdict reflects the following: "We, the jury, find the defendant, Jack Fenner Elliott, guilty of gambling promotion as charged in the indictment."

The majority opinion asserts that when the indictment is "read in its logical order, [it] alleges that applicant 'received and recorded and offered to bet' on a sporting event." (At page 765.).

Over 100 years ago, this Court's predecessor, the Texas Court of Appeals, stated the following in *Martin v. State*, 40 Tex. Rep. 19 (1874):

> First, it is objected that the use of the conjunction 'and' before the word 'assault' [defendant was charged with committing "and assault"], instead of the article 'an,' destroys the sense of the charge and vitiates it. But that this is a mere clerical mistake seems apparent, and the sound of the two words is so nearly the same that in reading it could scarcely be misunderstood. Moreover, such a defect, if deemed important, should have been specifically pointed out in the exceptions, which was not done. (21).

So much for reading the indictment "in its illogical order".

Therefore, when read in its "logical order", without the clerical error, the indictment alleges in pertinent part that applicant "receive[d] and record[ed] an offer to bet." One of the ways that § 47.03(a)(2) might be violated is if a person intentionally or knowingly "receives or records an offer to bet." *Adley*, supra, held that the "receiving" part of the statute was unconstitutional.

This Court has held for so long that there is no error in pleading the offense in the conjunctive and instructing the jury in the disjunctive that citation of authority is not necessary for what is now a very elementary principle of law. However, it is this principle of law that obviously caused the trial court to erroneously instruct the jury, because wherever the word "and" appeared in the indictment, he used the disjunctive "or" instead, thus permitting the jury to convict applicant of making an

offer to bet, which is no crime in our Penal Code. Unquestionably, if the trial judge, in his charge to the jury, had stated "received or recorded an offer to bet" he would have correctly instructed the jury on what basis they could have found applicant guilty.

In this instance, the jury was instructed in the "application" paragraph of the charge that "Now if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of November, 1981 in Harris County, Texas, the defendant, Jack Fenner Elliott, did then and there intentionally or knowingly receive[d] or record[ed] or offer to bet, over the telephone, on a sporting event, to wit: a football game played between the Pittsburg [sic] Steelers and Cleveland Browns on November 22, 1981, from a person known only to the Grand Jury as Player 77, as alleged in the indictment, then you will find the defendant guilty." The jury found applicant guilty, "as alleged in the indictment."

As easily seen, there is no object for the words "received" and "recorded" in the charge to the jury, and making an "offer to bet" over the telephone is no crime under § 47.03(a)(3) because it is only when a person receives or records an offer to bet or forwards the offer to bet that a crime has been committed under the statute. Thus, if the jury followed the trial court's instruction, and we must presume it did, under this charge the only thing the jury could have found applicant guilty of committing was offering to bet over the telephone on the alleged game, which is no crime.

The majority opinion grants applicant relief pursuant to this Court's decision of *Adley v. State,* supra. *Adley,* supra, however, is inapplicable to the error in the court's charge.

What is applicable to this cause is the following: An individual who has been convicted pursuant to a fundamentally defective jury charge, which is so egregious as to rise to the level of a constitutional violation or is so prejudicial as to render the trial itself fundamentally unfair, is entitled to be granted federal habeas corpus relief. In that instance, there is no need for an objection to the charge. See, for example,

*Tarpley v. Estelle,* 703 F.2d 157 (5th 1983), *Plunkett v. Estelle,* 709 F.2d 1004 (5th Cir.1983), and *Tyler v. Phelps,* 643 F.2d 1095, 1100 (5th Cir.1981). Also *Ex parte Maldonado,* 688 S.W.2d 114 (Tex.Cr.App. 1985).

A jury instruction that allows the jury to convict an accused for committing something which is not a crime is so ailing that it causes any resulting conviction to violate due process of law. The effect of the "application" paragraph in this charge permitted the jury to find applicant guilty of committing something which was not a crime, and thus so infected applicant's trial as to render it fundamentally unfair. Given the "application" paragraph of the charge, and the jury's verdict, the conclusion is inescapable that the jury's verdict may have rested upon an unconstitutional basis. Applicant's conviction should be set aside.

However, notwithstanding that as a matter of federal constitutional law applicant's prior felony conviction is void, applicant is at this time, for the reasons stated, in the wrong courthouse. His application should be dismissed without prejudice to pursue his claim for relief in the proper courthouse.

For all of the above and foregoing reasons, I respectfully dissent.