**Dan THOMAS, Appellant,**

v.

**Wayne SCOTT, Director Texas Department of Criminal Justice–Institutional Division, Appellee.**

No. 07–95–0333–CV.

Court of Appeals of Texas, Amarillo.

June 26, 1996.

Rehearing Overruled Aug. 7, 1996.

Dan Thomas, Iowa Park, Pro Se.

Dan Morales, Attorney Gen. of Texas, Jorge Vega, Drew T. Durham, Ann Kraatz, Lori K. Timms, Asst. Atty. Gens., Austin, for Appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

Dan Thomas appeals from an order dismissing, as "frivolous" under § 13.001 of the Texas Civil Practice and Remedies Code, his civil action against Wayne Scott, Director of the Texas Department of Criminal Justice–Institutional Division (Scott). In one point of error, he contends that the trial court abused its discretion by issuing the dismissal order. We disagree, overrule the point, and affirm.

### Background

Thomas is currently serving a 44 year sentence in the state penitentiary via a conviction for aggravated assault, § 22.02(a)(2) of the Texas Penal Code. Believing himself unlawfully deprived of "good conduct time" due to his "assigned P.A.M.I.O. status," he, as a pauper, sued Scott under the Texas and United States Constitutions.[1] The inability to accrue good time purportedly denied him due process and equal protection recognized under both charters. It also constituted cruel and unusual punishment, he alleged. The trial court thought otherwise and dismissed the proceeding at the behest of Scott.

### Authority

A trial court may dismiss an action brought *in forma pauperis* if it determines that the proceeding is frivolous. *Tex. Civ. Prac. & Rem.Code Ann.* § 13.001(a)(2) (Vernon Supp.1996). Though the state legislature listed three bases upon which the trial judge could make its determination, the Texas Supreme Court, in *Johnson v. Lynaugh,* 796 S.W.2d 705 (Tex.1990), effectively limited them to one. The court may dismiss only if it concludes that the claim lacks arguable

1. P.A.M.I.O. is an acronym of the "Program for the Aggressively Mentally Ill Offender."

basis in law or fact. *Id.* at 706. Furthermore, we cannot reverse the determination unless it amounts to an abuse of discretion. *Berry v. Texas Dept. of Criminal Justice*, 864 S.W.2d 578, 579 (Tex.App.—Tyler 1993, no writ).

### 1. Procedural Due Process

■ Good time is neither a constitutional right nor entitlement, *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex.Crim.App.1983), *citing, Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), but simply privilege. *Tex. Gov't.Code Ann.* § 498.003(a) (Vernon Pamph.1996). Moreover, not until the prisoner has accrued same does procedural due process become involved. *Ex Parte Henderson*, 645 S.W.2d at 472; *see Hamill v. Wright*, 870 F.2d 1032, 1036–37 (5th Cir.1989) (holding that there is a "crucial distinction between the loss of already accrued good-time credits ... in which the inmate ... [has] a liberty interest ... and the discretionary accrual of such credits" in which the inmate does not).

Here, Thomas does not contend that the "policy" allegedly implemented by Scott deprived him of good or work time credit which he had accrued. Rather, he asserts that the State deprived him of due process *by not extending him* the good time in the first place. Yet, having never received the particular good time desired, he has no basis upon which to demand procedural due process under either the State or Federal Constitution. *Ex parte Henderson, supra; Hamill v. Wright, supra; see Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir.1994) (holding that since the prisoner had no constitutionally protected interest in shortening the term of his confinement, he had "no viable claim to any specific due process procedures"); *accord University of Texas Medical School v. Than*, 901 S.W.2d 926, 929 (Tex.1995) (holding that in matters of due process accorded in the

Texas Constitution, "we have traditionally followed contemporary federal due process interpretations.")

### 2. Substantive Due Process and Equal Protection

■ Whether a prisoner should be granted good time credit *per se* implicates neither a fundamental right nor a suspect classification. Furthermore, Thomas has not alleged or argued otherwise with regard to the policy at issue. Thus, whether it denies an individual equal protection is dependant upon whether it enjoys a rational relationship to a legitimate governmental interest. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 524 (Tex.1995) (involving article I, § 3 of the Texas Constitution); *Thornton v. Hunt*, 852 F.2d 526, 527 (11th Cir.1988) (involving the denial of good time due to the classification assigned prisoners). The identical test is also used in assessing whether a state promulgation comports with substantive due process. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d at 525.[2]

■ In applying the foregoing test, we recognize that a governmental body has a legitimate interest in refusing early release to serious offenders. *Thornton v. Hunt*, 852 F.2d at 527. Texas, itself, has manifested that interest through article 42.18, § 8(c) of the Texas Code of Criminal Procedure. Therein, the legislature decreed that prisoners incarcerated for certain serious offenses, such as the commission of an aggravated assault under § 22.02 of the Penal Code, may not be released to mandatory supervision. *Tex.Code Crim. Proc. Ann.* art. 42.18, § 8(c)(5) (Vernon Supp.1996). Nor may good time credit be used in calculating the minimum amount of time a prisoner must serve to qualify for parole if that prisoner was found to have used or exhibited a deadly

---

**2.** Some suggest that the Texas Constitution imposed a more stringent standard. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 524 (Tex.1995). Yet, the alternate standard, like that used under the Fourteenth Amendment of the United States Constitution, too focuses upon the legitimate purposes for which the State may act and the appropriateness of the statute in accomplishing those purposes. *State v. Richards*,

157 Tex. 166, 301 S.W.2d 597, 602 (1957). Moreover, both vest in the legislature much discretion in determining not only what the interests of the public are but also the means necessary to protect them. *See id.* Thus, if there is a difference between the two, it is not as great as some may believe, and, in any case, we conclude that the policy at issue here satisfies both.

weapon while committing an offense. *Tex. Code Crim. Proc. Ann.* art. 42.18, § 8(b)(3) (Vernon Supp.1996).[3] Its interest in curtailing the early release of those deemed aggressively mentally ill and assigned to P.A.M.I.O. is no less legitimate. Furthermore, a logical way of curtailing the early release of such prisoners is by denying them good time credit, especially when they have no right to good time to begin with. Thus, we find, at bar, a reasonable nexus between the interest sought to be furthered and the means of furthering it and must uphold the policy at issue against attack via substantive due process and equal protection.[4]

### 3. Cruel and Unusual Punishment

Only conduct or activity which amounts to an unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156, 165 (1992). Furthermore, whether and when the State crosses this threshold depends upon, among other things, whether the purported wrong is "objectively 'harmful enough.'" *Id.* at 8, 112 S.Ct. at 999, 117 L.Ed.2d at 166, *quoting, Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). This, in turn, is determined by reference to the contemporary societal standards of decency. *Id.* at 8–9, 112 S.Ct. at 1000, 117 L.Ed.2d at 167; *accord Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 259 (1976) (stating that the Eighth Amendment embodies "'broad and idealistic concepts of dignity, civilized standards, humanity and decency'"); *Ex parte Granviel,* 561 S.W.2d 503, 508–10 (Tex.Crim. App.1978) (relying upon similar concepts of "'humane justice'" and "'evolving standards of decency'" in assessing whether punishment is cruel and unusual under the Texas Constitution).

Here, Thomas, in effect, decries his lost *opportunity* for early release due to his involvement in a program for the aggressively

mentally ill. He does not posit that he was wrongfully assigned to the program. Nor does he allege that he is *entitled* to early release, that accruing good time *will* result in his early release, or even that the actual length of his sentence is unlawful.

Thus, as per *Hudson* and *Granviel,* we ask whether denying him a wishful expectancy of early release somehow impugns societal notions of dignity, decency, and humanity. We answer no. Having those who commit crime serve their full sentence does not shock the societal conscience. *See Rodriguez v. State,* 917 S.W.2d 90, 92 (Tex. App.—Amarillo 1996, pet. filed) (holding that serving a sentence within the statutory range of punishment does not "shock the sense of humankind.") Indeed, the social conscience and its concepts of decency, as reflected in the verdict and sentence of a trial judge or jury, would best be served by incarcerating felons to the extent declared by the judge and jury. Given this, denying Thomas good time and a mere expectancy of early release is not cruel and unusual punishment. *See Shifrin v. Fields,* 39 F.3d at 1114 (holding that it does not violate the Eighth Amendment to deny a prisoner emergency time credit when a prison is overcrowded); *See also Malek v. Haun,* 26 F.3d 1013 (10th Cir.1994) (holding that denying a prisoner parole is not cruel and unusual punishment because he has no legitimate entitlement to early release).

In sum, the allegations in Thomas' pleading, accepting them as true, present no arguable constitutional violation. So, the trial court did not abuse its discretion in dismissing the suit.

Accordingly, we affirm.

---

3. Thomas represents that he was convicted under *Texas Penal Code Ann.* § 22.02(a)(2) (Vernon 1994), that is "us[ing] or exhibit[ing] a deadly weapon during the commission of [an] assault."

4. To the extent that Thomas claims a violation of article I, § 3a of the Texas Constitution, we note that the *status* of "prisoner" is not a classification contemplated by the provision. Thus, it has no application to the circumstances at bar.